# THE MANITOBA.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MICHIGAN.

Argued May 5, 1887. — Decided May 23, 1887.

Prior to a collision between two steam vessels, the C. and the M., they were moving on nearly parallel, opposite, but slightly converging lines, and that fact was apparent to the officers of both for some considerable time before the C. ported and ran across the course of the M. The M. did not slaken her speed, or signal her intentions, or reverse until it was too late. The relative courses of the vessels, and the bearing of their lights, and the manifest uncertainty as to the intentions of the C., in connection with all the surrounding facts, called for the closest watch and the highest degree of diligence, on the part of each, with reference to the movements of the other: *Held,* that, although the C. was in fault, the M. was also in fault for not indicating her course by her whistle, and for not slowing, and for not reversing until too late.

The proper mode of applying a limitation of liability, where both vessels are in fault and the damages are divided, and both vessels are allowed such limitation, stated.

The M. having been bonded, in the limited liability proceedings, on a bond in a fixed sum, conditioned to "abide and answer the decree," that sum does not carry interest until the date of the decree of the District Court.

The loss of the C., with interest from the date of the collision to the date of the decree of the Circuit Court, exceeded the loss of the M., with like interest, by a sum, one-half of which was greater than the amount of such bond, with interest from the date of the decree of the District

Court to the date of the decree of the Circuit Court. It was, therefore, proper for the Circuit Court to award to the C., as damages, the amount of the bond, with such interest.

IN admiralty. The case is stated in the opinion of the court.

*Mr. F. H. Canfield* for appellants. *Mr. William A. Moore* was with him on the brief.

*Mr. Henry H. Swan* for appellees. *Mr. H. L. Terrell* filed a brief for same.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

The propeller Comet and the steamboat Manitoba came into collision between 8 and 9 o'clock in the evening of the 26th of August, 1875, on the waters of Lake Superior, about six or seven miles to the southward and eastward from Whitefish Point, on the south shore of that lake, the Comet being bound from Grand Island, in Lake Superior, to Cleveland, Ohio, and the Manitoba being on a voyage from Sarnia, Ontario, to Duluth, in Minnesota. The Manitoba struck the Comet on her port bow, causing her to sink almost immediately, and she and her cargo were totally lost. The Manitoba was also injured.

Howard M. Hanna and George W. Chapin, as owners of the Comet, filed a libel *in rem* against the Manitoba, on the 4th of September, 1875, in the District Court of the United States for the Eastern District of Michigan, to recover damages for the loss of the Comet and her cargo and freight money, claiming $70,125, being $30,000 for the Comet, $35,000 for her cargo, and $5125 as freight money. The libel alleges, that the collision was occasioned solely by the negligence and unskilfulness of the persons navigating the Manitoba, "in not having proper officers and men on duty and at their posts, in not porting, signalling answering signals or stopping engine, and in starboarding and running into and upon said propeller, and, by said omissions of duty, and other omissions of duty, and by said and other wrong movements and misconduct, solely causing said collision, and making it inevitable by any conduct,

vigilance, or effort on the part of those in charge. of the "
Comet.

The statement of the libel is that the Comet made the white
light, and, shortly afterward, the red light of the Manitoba,
off the port bow of the Comet, the night being clear; that the
Manitoba was on a course opposite or nearly opposite to that
of the Comet; that the Comet proceeded on her course with
such red light off her port bow, and properly ported her helm,
and gave a single blast of her whistle, and stopped her engine;
and, that, although the lights of the Comet were properly set
and burning, and visible to the Manitoba, the Manitoba, in-
stead of porting and taking further measures to avoid the
Comet, starboarded her wheel and struck the Comet on her
port bow.

Henry Beatty and John D. Beatty appeared as claimants of
the Manitoba, and, with Robert J. Hackett and Frederick B.
Sibley as sureties, gave a bond for the release of the Manitoba,
in the sum of $28,948.85, $200 of that sum being for costs.

On the 17th of November, 1875, James H. Beatty, Henry
Beatty, William Beatty and John D. Beatty answered the
libel of the owners of the Comet. The answer denies the ver-
sion of the occurrence given in the libel, and avers that the
Manitoba made the bright light of the Comet when the Comet
was heading upon nearly, if not quite, a parallel, opposite
course to that of the Manitoba, the Manitoba being on a
course about northwest half north; that the Comet showed
her bright and green lights, bearing from one-half to three-
quarters of a point on the starboard bow of the Manitoba;
that the Manitoba starboarded half a point and was steadied
on that course; that the Comet continued to approach the
Manitoba, showing only her white and green lights, and as if
to pass at a good, fair berth on the starboard hand of the
Manitoba, until she appeared to be but a short distance off,
when she was observed by the watch of the Manitoba to be
swinging across the bows of the Manitoba, as if under a port
wheel, upon which the engine of the Manitoba was at once
checked, stopped, and backed, but it was not possible for her
to avoid the collision; and that the Manitoba suffered $5000

damages. The answer denies the allegations of fault in the Manitoba, set forth in the libel, and alleges that the collision was caused entirely by the fault of those navigating the Comet, in that (1) she did not have competent officers and watch on deck carefully attending to duty; (2) she did not keep her course and pass the Manitoba on her starboard hand, but recklessly attempted to cross the bow of the Manitoba when she was so near as to make collision probable; (3) she did not stop and reverse, but kept up a reckless speed, in her approach to the Manitoba, "when there was risk of collision." The answer also avers that, with the claim filed to the Manitoba, after her seizure under the warrant for her arrest, the respondents filed a petition setting forth that the claim of the libellants was much greater than the value of the Manitoba and her freight, and praying that she, and her freight then pending, might be appraised; and that such proceedings were had that the claimants gave a bond, with sureties, in the sum of $28,950 as a substitute for the vessel and her freight then pending. The answer claims the benefit of a limitation of liability, under the act of Congress, against any recovery for any sum greater than the penal sum named in said bond.

On the same day, the owners of the Manitoba filed a cross-libel against Hanna and Chapin, as owners of the Comet, to recover the damages caused to the Manitoba by the collision, being $5000. The cross-libel gives the same account of the collision that is given in the answer to the libel, and alleges the same faults on the part of the Comet.

The case rested in this position for more than two years, when Hanna and Chapin filed an answer to the cross-libel, denying its allegations as to the facts attending the collision, alleging the facts to be as set forth in the original libel, and denying any fault on the part of the Comet. It also avers, that, as the Comet and her pending freight were totally lost by the collision, her owners became, by virtue of § 4283 of the Revised Statutes, discharged from any liability to the cross-libellants by reason of the collision.

The two cases were heard together before the District Court, and, on the 29th of April, 1878, it made a decree, on

pleadings and proofs, that the damages be divided, and referred it to a commissioner to report their amount.

On the 14th of June, 1880, the commissioner reported as follows: value of the Comet, a total loss, $25,000; value of her cargo, $31,941.88; freight money earned by her at the time of the collision, $500; making a total of $57,441.88. He reported the damage to the Manitoba to be $5000.

On a hearing on the report, the District Court, on the 15th of March, 1882, made a decree, entitled in both causes, confirming the report at the amounts so reported by the commissioner. The decree then proceeded as follows: "And it further appearing to the court, that the said libellants and cross-libellants have respectively claimed the benefit of the act of Congress of the United States entitled 'An Act to limit the liability of ship-owners, and for other purposes,' being §§ 4283, 4284, 4285 and 4286 of the Revised Statutes of the United States, and that the said steamer Manitoba has been duly bonded in accordance with the provisions of said statutes, by Henry Beatty and John D. Beatty, claimants, and Robert J. Hackett and Frederick B. Sibley, as sureties, in the sum of $28,694.95, by their bond or stipulation, conditioned to abide the decree of this court, and consenting that unless they shall so do execution should issue against them therefor, which sum is less than the damages occasioned by said collision; and this court having, by its interlocutory decree heretofore entered in this cause, found that both said vessels were in fault for said collision, and that the damages occasioned thereby, be equally divided, it is, therefore, ordered, adjudged, and decreed, that said libellants recover from the said claimants and their sureties the sum of twenty-eight thousand six hundred ninety-four $\frac{95}{100}$ ($28,694.95), being the amount of said bond or stipulation, and that said libellants have execution therefor against said Henry Beatty, John D. Beatty, Robert J. Hackett, and Frederick B. Sibley; and it is further ordered that neither the libellants nor the cross-libellants herein recover costs against the other." This decree was proper in its figures. Allowing interest on the damages from the date of the collision to the date of the decree (which was proper) and fixing the liability

for the $28,694.95 as of the date of the decree, (which was proper, in view of the fact that the condition of the bond was to "abide and answer the decree," and so the $28,694.65 did not carry interest prior to the date of the decree,) the Manitoba was liable to pay to the Comet $36,476.74, on a proper computation based on a division of the damages, according to the principle of computation hereinafter stated, and the Manitoba had the proper limitation of liability in paying only $28,694.65, at the date of the decree. The discrepancy between that amount and the amount stated in the bond is not explained, but is not remarked upon by the parties. The obligors in such a bond are not liable for interest prior to the decree of the District Court, but are liable for interest from the date of such decree. *The Ann Caroline*, 2 Wall. 538; *The Wanata*, 95 U. S. 600.

The owners of the Manitoba, on the 13th of April, 1882, appealed to the Circuit Court from so much of the final decree of the District Court, of March 15, 1882, as adjudged the Manitoba to be in fault for the collision, and also from so much of that decree as awarded to Hanna and Chapin the sum of $28,694.95, "without any deduction or allowance therefrom to these appellants on account of injuries occasioned by said collision to the said steamer Manitoba," and also from so much of the interlocutory decree of the 29th of April, 1878, as decreed that the Manitoba was in fault for the collision, and that the damages occasioned thereby should be equally divided between the owners of the Comet and the owners of the Manitoba. The owners of the Manitoba perfected their appeal, by giving a stipulation for damages and costs, in the sum of $35,000, in the names of James H. Beatty, Henry Beatty, and John D. Beatty, with the Detroit Dry Dock Company as surety. The owners of the Comet did not appeal. The Circuit Court heard the case on pleadings and proofs, and filed its finding of facts and conclusions of law, entitled in both causes, on the 26th of December, 1883, as follows:

"That the collision between the propeller Comet and the steamship Manitoba took place between the hours of eight

and nine o'clock on the night of the 26th of August, 1875, and at about six or seven miles distant from, and to the southward and eastward of, White Fish Point, on the south shore of Lake Superior; that at that time said propeller was bound down the lake, upon a voyage from Grand Island to Cleveland, Ohio, and, when she made the Manitoba's light, her general course was southward. The Manitoba was moving in nearly an opposite direction, on a voyage from Sarnia, Ontario, to Duluth, Minnesota. She first made the Comet's light when she was between White Fish Point and Point Iroquois, her general course then being northwest half north. The officers of each of the colliding vessels discovered, soon after the Comet had rounded White Fish Point, first the white and soon thereafter the green lights of each other, and they continued to approach each other on nearly parallel opposite courses, each showing to the other her white and green lights only. Both vessels had the usual complement of officers and men. When they were from one and a half to two miles apart the Manitoba had the Comet's green light about three-quarters of a point on her starboard bow. The Manitoba then starboarded her wheel half a point, and continued her course without change until just before the collision. In the meantime the Comet ported her wheel for the second time half a point, and the two vessels thus continued to approach each other, showing their green and white lights only, until they had come within from 400 to 500 feet of each other, the Comet being then from 200 to 300 feet on the starboard side of the Manitoba, and, if each had kept their respective courses, they would have passed without colliding; but at this juncture the Comet ported her wheel, displayed her red light, and suddenly sheered across the Manitoba's course. The Manitoba thereupon starboarded her wheel, and the collision ensued. At the time, the Manitoba was running about eleven and the Comet about nine miles an hour. The Manitoba struck the Comet on her port bow, which caused her to sink in about two minutes, whereby she and her cargo were irrecoverably lost and the Manitoba quite severely injured. Neither of said vessels sounded any signal of the

whistle, indicating the side it intended or desired to take, nor did either of them reverse its engine or slacken its speed until the collision was inevitable, but the Manitoba did, just before or about the time it collided with the Comet, reverse its engine. The fact that the two vessels were moving on nearly parallel, opposite, but slightly converging, lines was manifest and apparent to the officers of both, for some considerable time before the Comet ported and ran across the Manitoba's course, as hereinbefore stated. Nevertheless, neither, as hereinbefore stated, slackened speed, changed its course, or signalled its intentions. The relative courses of these vessels, and the bearing of their lights, and the manifest uncertainty as to the Comet's intentions, in connection with all the surrounding facts, called for the closest watch, and the highest degree of diligence, on the part of both, with reference to the movements of the other, and it behooved those in charge of them to be prompt in availing themselves of any resource to avoid, not only a collision, but the risk of such a catastrophe. If the requisite precautions had been observed by both or by either of said vessels, the collision, in the opinion of the court, would not have happened. Each vessel misapprehended the purposes of the other. The Comet was endeavoring to apply art. 18 of c. 5, title 'Commerce and Navigation,' of the Revised Statutes of the United States, while the Manitoba probably believed, until the Comet's sudden sheer across her bow, that the Comet intended to pass on her starboard side. It was this misapprehension on the part of said respective vessels, which might have been timely obviated by proper signals from either, that occasioned the collision."

The court then finds the value of the Comet, and of her cargo and pending freight, and the damage to the Manitoba, at the amounts reported by the commissioner; that the value of the Manitoba and her pending freight was duly appraised under the order of the District Court, and proceedings were had pursuant to §§ 4283 to 4286 of the Revised Statutes, and security was filed for such appraised value in the sum of $28,694.95; and that the owners of both vessels claimed and

are entitled to the benefit of those sections.  The court then proceeds :

" And from these facts the court deduces the following conclusions of law : 1. That said vessels were not meeting end on or nearly end on, within the meaning of art. 18, of c. 5, of tit. XLVIII, 'Commerce and Navigation,' of the Revised Statutes of the United States, and that the Manitoba was not, in view of the circumstances of the case, in fault for the starboarding her wheel just prior to said collision.  2. That the immediate or proximate cause of the collision was the putting by the Comet of her wheel hard-a-port, as herein previously found, and endeavoring to cross on the port side of the Manitoba, and that she was in fault for so doing.  3. That the Manitoba was in fault in ignoring the fact that the Comet was approaching under a port wheel, and that the courses of the two vessels were convergent and involved risk of collision, and in failing to take proper precaution in time to prevent the collision which afterwards occurred.  4. That she was further in fault in not indicating her course by her whistle, and for not slowing up, and in failing to reverse her engine until it was too late to accomplish anything thereby.  5. That both vessels were in fault in failing to take necessary and proper precautions against collision, which the circumstances manifestly required, and that the damages occasioned by said collision ought to be equally apportioned between said two vessels."   The court further finds, that the libellants are entitled to recover from the owners of the Manitoba, and their sureties on appeal, by reason of the limited liability proceedings, only the sum of $28,694.95, and interest thereon from March 7, 1882, the date of the decree of the District Court, together with the costs of the libellants on the appeal; that, to the extent of the $28,694.95, the libellants are entitled to enforce payment of their damages against the claimants of the Manitoba, and their surviving surety, on the stipulation filed in the District Court for the appraised value of the Manitoba; and that, by reason of the total loss of the Comet and her cargo, and the provisions as to limited liability, and the fact that one moiety of the damages suffered by the libellants far exceeds

the damages suffered by the owners of the Manitoba, and interest thereon, the owners of the Manitoba are not entitled to recover any sum whatever from the libellants.

On the 18th of March, 1884, the Circuit Court made a final decree, entitled in both causes, which fixes the damages at the amounts reported by the commissioner, and declares that both vessels were in fault for the collision; that the damages shall be equally divided; that the owners of both vessels claim and are entitled to the benefit of a limitation of liability; and that the sum of $28,694.95, at which the Manitoba and her pending freight were appraised in the limited liability proceedings and bonded, is less than one moiety of the damages occasioned by the collision; and then proceeds as follows:

"It is, therefore, ordered, adjudged, and decreed, that said libellants, Howard M. Hanna and George W. Chapin, do recover of and from said James H. Beatty, Henry Beatty, William Beatty, and John D. Beatty, claimants of said steamer Manitoba, and appellants herein, and of and from the Detroit Dry Dock Company, their surety on the bond or stipulation on appeal, filed in this court, the sum of $28,694.95, and the further sum of $3395.50, being the interest, at six per cent per annum, on the aforesaid sum of $28,694.95 from the 7th day of March, 1882, the date of the decree of the District Court, to the date of the decree of this court herein, in all, the sum of $32,090.45, together also with the costs of said libellants in this court, to be taxed, upon the appeal of said claimants of said steamer Manitoba from the decree of the District Court on said libel and cross-libel.

"And it further appearing to the court, that said Robert J. Hackett, one of the sureties on the bond or stipulation filed in the District Court for the appraised value of the steamer Manitoba and her freight, as aforesaid, has deceased, it is, therefore, ordered, adjudged, and decreed, that said libellants, Howard M. Hanna and George W. Chapin, do recover of and from the said James H. Beatty, Henry Beatty, William Beatty, and John D. Beatty, claimants of the steamer Manitoba, and Frederick B. Sibley, their surviving surety upon the bond for the appraised value of said steamer Manitoba and her freight

pending at the time of the collision mentioned in the pleadings in this cause, the sum of $28,694.95, in case of non-payment thereof by the claimants and their surety on appeal to this court.

"And that said libellants, Howard M. Hanna and George W. Chapin, have execution for the damages and costs to them. adjudged and decreed by the judgment and decree of this court, against said claimants, James Beatty, Henry Beatty, William Beatty, and John D. Beatty, and the Detroit Dry Dock Company, their surety on the bond or stipulation given by said claimants on appeal to this court, for the aforesaid sum of $28,694.95, and said further sum of $3395.50, as interest thereon, and for the costs of said libellants in this court, to be taxed.

"And it is further ordered, adjudged, and decreed, that, for the recovery of the damages decreed to libellants by the decree of the District Court and of this court, libellants have execution against James H. Beatty, Henry Beatty, William Beatty, and John D. Beatty, claimants, and said Frederick B. Sibley, their surviving surety on the bond or stipulation for the appraised value of said steamer Manitoba and the freight pending as aforesaid, in and for the amount of $28,694.95, the appraised value thereof as aforesaid, provided proceedings shall be had on the bond or stipulation given on appeal to this court, by said claimants of said steamer Manitoba, before recourse shall be had for collection on the bond or stipulation filed in the District Court for the appraised value of the steamer Manitoba and her freight pending at the time of said collision."

The claimants of the Manitoba have appealed to this court from so much of the decree of the Circuit Court as decrees the Manitoba to be in fault for the collision, and from so much of it as awards to the original libellants $32,090.45, "without any deduction or allowance therefrom to these appellants on account of injuries occasioned by said collision to the said steamer Manitoba." The main question of law arising on the record is as to the liability of the Manitoba.

The Circuit Court finds, as one of its conclusions of law,

"that the Manitoba was in fault in ignoring the fact that the Comet was approaching under a port wheel, and that the courses of the two vessels were convergent, and involved risk of collision; and in failing to take proper precaution in time to prevent the collision which afterwards occurred." The expression "risk of collision," found in the third conclusion of law, is not contained in the findings of fact proper; and it is, therefore, insisted, on the part of the Manitoba, that it is not found as a fact that the courses of the two vessels involved risk of collision, by the movement of the Comet under a port wheel, in her approach to the Manitoba, prior to the time when she put her wheel hard-a-port and crossed the bows of the Manitoba. But we think this is not a correct view. The findings of fact state, that, when the vessels were from one and a half to two miles apart, the Manitoba had the Comet's green light about three-quarters of a point on her starboard bow, and that the Manitoba then starboarded her wheel half a point and continued her course without change until just before the collision. This starboarding would bring the green light of the Comet further on the starboard bow of the Manitoba; but, in the meantime, the Comet ported her wheel half a point; and it is not found that the green light of the Comet continued to open wider to the view of the Manitoba. On the contrary, the findings state, that the fact that the two vessels were moving on nearly parallel, opposite, but slightly converging, lines, was apparent to the officers of both vessels for some considerable time before the Comet ported her wheel, and displayed her red light to the Manitoba, and suddenly sheered across the course of the Manitoba. The findings also state, that, from the relative courses of the two vessels, and the bearing of their lights, there was manifest uncertainty as to the intentions of the Comet, and that this called for the closest watch, and the highest degree of diligence, on the part of the Manitoba, with reference to the movements of the Comet, and that it behooved those in charge of her to be prompt in availing themselves of any resource to avoid, not only a collision, but the risk of such a catastrophe. The findings further state, that neither of the vessels sounded any

signal of the whistle indicating the side it intended or desired to take, nor did either of them reverse its engine or slacken its speed until the collision was inevitable; and that, if the requisite precautions, meaning the precautions just mentioned, had been observed by both or either of the vessels, the collision would not have happened.

In addition to the facts thus found, the answer of the claimants of the Manitoba to the original libel charges as a fault in the Comet, that she did not stop and reverse, but kept up a reckless speed in her approach to the Manitoba, "when there was risk of collision." This allegation is repeated in the cross-libel of the owners of the Manitoba. If there was risk of collision in the approach of the Comet towards the Manitoba prior to the sudden sheer of the Comet, it was a risk affecting the Manitoba equally with the Comet, and imposing upon her the same duties of slackening her speed, or, if necessary, stopping and reversing, under Rule 21 of § 4233 of the Revised Statutes, which it imposed on the Comet.

On the facts, the Circuit Court found, as a conclusion of law, and, we think, correctly, that the Manitoba was in fault in not indicating her course by her whistle, and in not slowing up, and in failing to reverse her engine until it was too late to accomplish anything thereby.

The facts in this case are very much like those in *The Stanmore*, 10 P. D. 135, where one of two steam vessels, under like circumstances with those of the Manitoba, was held in fault for not stopping and reversing, although the collision was mainly caused by the fault of the other vessel, which was also condemned.

A few words are necessary on the question as to whether, in the amount decreed to the original libellants, by the Circuit Court, allowance is made to the owners of the Manitoba on account of the damages to her. The findings of fact state that the owners of both vessels are entitled to the benefit of a limitation of liability, and that the owners of the Comet are entitled to recover from the owners of the Manitoba and their sureties on appeal, by reason of the proceedings for a limitation of liability, only $28,694.95, and interest thereon

from March 7, 1882, the date of the decree of the District Court. The decree of the Circuit Court states that the value of the Manitoba and her freight pending at the time of the collision was duly appraised, in the proceedings for a limitation of liability, at the sum of $28,694.95, and that she was duly bonded for that sum, "which sum," the decree states "is less than one moiety of the damages occasioned by said collision." Those damages, with interest at six per cent per annum from the date of the collision to the date of the decree of the Circuit Court, amounted to $93,288.16. One-half of that is $46,644.08. On the ground that the amount of the appraised value of the Manitoba and her pending freight was "less than one moiety of the damages occasioned" by the collision, the Circuit Court adjudged that the owners of the Comet should recover from the claimants of the Manitoba, and from their surety on appeal, the Detroit Dry Dock Company, the sum of $28,694.95, with interest thereon from the 7th of March, 1882, the date of the decree of the District Court, and should recover from the claimants of the Manitoba and the surviving surety on the bond given in the District Court for the appraised value of the Manitoba and her pending freight, the sum of $28,694.95, in case of non-payment thereof by the claimants or the Detroit Dry Dock Company.

We had occasion to consider this subject at length in the case of *The North Star*, 106 U. S. 17, in which Mr. Justice Bradley delivered the opinion of the court. In that case there was a collision between two steam vessels, the Ella Warley and the North Star. The Circuit Court held both vessels in fault, the Ella Warley being sunk and lost and the North Star damaged. There was a libel *in rem* against the North Star and a libel *in personam* against the owners of the Ella Warley. The Circuit Court rendered a decree in favor of the owners of the Ella Warley for so much of the damage to her, (it being greater than that sustained by the North Star,) as exceeded one-half of the aggregate damage sustained by both vessels. The owners of the Ella Warley had claimed the benefit of a limitation of liability. On appeals to this court by both parties, it was contended on behalf of the Ella Warley,

that, as she was a total loss, the half of the damage to her must be paid in full, without any deduction for the half of the damage sustained by the North Star. This court, after a full examination of the subject, held that the proper rule was, that, as each vessel was liable for one-half of the damage done to both, if one suffered more than the other, the difference should be equally divided, and the one which suffered least should be decreed to pay one-half of such difference to the one which suffered most, so as to equalize the burden. In other words, as both parties were in fault, the damage done to both vessels should be added together in one sum and equally divided, and a decree be pronounced in favor of the owners of the vessel which suffered most, against those of the vessel which suffered least, for one-half of the difference between the amounts of their respective losses. The House of Lords established the same rule in *Stoomvaart Maatschappy Nederland* v. *Penins. & Oriental Steam Nav. Co.*, 7 App. Cas. 795.

Applying this rule to the present case, the amount of the aggregate damage to both vessels, computed with interest to the date of the decree of the Circuit Court, was $93,288.16; being for the Comet, $85,818.16, and for the Manitoba, $7470.00. One-half of this was $46,644.08. The loss of the owners of the Comet and of her cargo and pending freight was greater than that of the owners of the Manitoba by the sum of $78,348.16. One-half of that difference was $39,174.08. That was the amount of the liability of the Manitoba to the Comet, at the date of the decree of the Circuit Court, on a division of the damages, after a proper allowance to the Manitoba for the damage to her, and without reference to the limitation of liability. As the amount of the bond of the Manitoba, $28,694.95, with interest at six per cent per annum, from the date of the decree of the District Court to the date of the decree of the Circuit Court, was only $32,090.45, the Manitoba had the proper limitation of liability allowed to her by the decree of the Circuit Court, and was entitled to that limitation.

*Decree affirmed*