Simonton, District Judge.
These cases grew out of a collision in Patapsco river, not far from the city of Baltimore, on 28th July, 1890, between the excursion steamer Louise, of the Tolchester Steamboat Company, and the steamer Virginia, of the Baltimore Steam Packet Company. The Louise had on board a large number of passengers, of whom some were killed and others more or less injured. Suits were instituted against the owners of both steamers in the state court of Maryland to recover damages for these injuries, and libels were filed in the district court seeking limitation of liability upon the part of these owners. Libels were also filed against each steamer. All the cases were consolidated. Voluminous testimony was taken. The cause was heard in the district court. Both steamers were declared in fault, the damages were divided between them, and the gross amount of their appraised values were apportioned among the parties entitled to bring action for the injuries sustained. The case was carried into the circuit court, and the decision of the district judge was affirmed in every respect. It comes before us on appeal from this decree.
The place of the collision was the Patapsco river. This river has in it dredged channels. Of these the Brewerton channel runs from Chesapeake bay N. W. by W. ¾ W. until it meets the Ft. McHenry channel. This Ft. McHenry channel runs from its junction with the Brewerton channel N. W. by N. to the entrance of the harbor of Baltimore. Where the two channels unite is a bend. Although for vessels of the draft of these we are discussing there is plenty of water in the river on each side of these channels, still the channels are generally used by steamers, who, as a rule, keep on that side of the channel to the starboard. On the day of collision, which occurred about 8:11 p. m., the Virginia was coming from Baltimore down the Ft. McHenry channel, at her usual speed of 14 miles an hour, a little, but very little, behind time.' She was nearing the bend. Approaching her in the Brewerton channel, beyond *887 the bend, was the three-mast schooner Yale, proceeding under her own sails towards Baltimore. She was in mid-channel. Still further down the river, and in the Brewerton channel, was the steamer Louise, on her way from Tolchester to Baltimore, with a large excursion party aboard, on time, proceeding at a rate of 11 or 12 miles an hour. Outside of the channel, to the northward and eastward and off the starboard bow of the Yale, was the tug Mamie, apparently going towards the Yale, seeking a tow. All these vessels had the proper lights set. The steamers were on their own sides of the channel. When about a mile and three quarters from the Virginia, the Louise, seeing her lights across the bend, the headlight, and her red light, blew two whistles, intended for the Virginia. This signal was answered by the Mamie, and assented to. No answer whatever came from the Virginia. Without waiting for any reply, the Louise starboarded her wheel, and, when the tug answered, starboarded a little more, and proceeded on her course in the direction of the Yale, porting her helm a little. Her movements were obscured from the Virginia by the interposition of the Yale. Her direction carried her across the wake of the Yale; and getting out behind the port quarter of the schooner, she saw the Virginia coming towards her with both red and green lights showing.. The Louise again blew two blasts of her whistle. Her witnesses say that these were answered by the Virginia. This is denied by the witnesses for the Virginia. At all events, immediately after the two whistles from the Louise, the Virginia blew danger signals, and began at once to reverse. In an almost incalculable time the two steamers collided, the Virginia having made only two revolutions of her wheel backward. Five revolutions would reverse her course. The Virginia struck the Louise on her starboard quarter about 20 to 25 feet from her stern. Just before the collision the Louise slackened her speed a little. At the collision, she stopped her engines.
The reasons assigned by the district judge for holding the Louise in fault are so clear and conclusive (49 Fed. Rep. 84) that they need not be repeated. They command our concurrence. We experience, however, as he did also, great difficulty with the question as to the Virginia. She was well appointed, had proper lights and lookout, and every one on duty upon her was at his post, and vigilant. When the first signal of the Louise was heard on the Virginia, she was seen distinctly. But her signal lights were not seen. At that time she was passing behind the Yale, and only her saloon lights could be observed. The master of the Virginia, noting this, and observing the distance opened between her and the Yale, conjectured that it was the intention of the Louise to pass between the Mamie and the Yale to the starboard of the schooner. The reply signal of the Mamie seemed to confirm him in this conjecture, and he paid no special attention to the Louise or her signal, directing all his observation to the schooner, and keeping out of her way. The hull and the sails of the Yale obscured the Louise, and nothing certain was known of her movements, when she appeared unexpectedly from behind the stern of the Yale off her port quarter. Her second signal was heard, recognized, and answered by the Virginia, as her master insists, by the *888 danger signal. Instantly he reversed, but too late for the collision, which came almost immediately. Up to the second blast of the Louise the Virginia had proceeded at full speed, not anticipating any danger from her. After he heard this blast, her master did all that the exigency required.
When the Virginia heard the first blast of the Louise they were about a mile and three quarters apart, in converging channels, with a vessel under sail between them, and approaching each other at an aggregate speed of 25 or 26 miles an hour,—a very little more than four minutes apart. They all were in a place full of danger, and where there was great liability of collision. The Kate Irvine, 2 Fed. Rep. 919. This blast of the Louise gave notice to every one hearing it that she was leaving her customary side of the channel, and was coming over to that side of it on which was the Virginia. Her master saw the Louise in the act of this maneuver, that her signal light had disappeared behind the Yale, and that her saloon lights were disappearing in the same way. He knew that the Louise in fact had got behind the Yale, and that her future movements, if not entirely unknown, were at least uncertain. Yet the Virginia was kept at full speed, no precaution whatever being taken for any action on the part of the Louise, the master of the Virginia relying entirely upon the theory that she would pass to the starboard of the Yale. The rules laid down. for preventing collisions of vessels, (Rev. St. §4233,) and the regulations prescribed by the board of supervising inspectors, and given the force of the law under section 4405, provide for every probable contingency. These leave but little room for mere conjecture in controlling the action of the master and pilot. Each of' them has in his power the means of ascertaining with approximate certainty the intention and course of an approaching steamer. He must use them. Notwithstanding this, errors committed by one of two vessels approaching each other from opposite directions do not excuse the other from adopting every proper precaution required by the special circumstances of the case to prevent a collision. Rule 24; The Maria Martin, 12 Wall. 47; The Scotia, 14 Wall. 181. If there be any uncertainty as to the intentions of the approaching vessel, this of itself calls for the closest watch and the highest degree of diligence on the part of the other vessel with reference to her movements, and it behooves those in charge to be prompt in availing themselves of every resource to avoid, not only a collision, but the risk of such a catastrophe. The Manitoba, 122 U. S. 108, 7 Sup. Ct. Rep. 1158. In the language of Mr. Justice Clifford in The America, 92 U. S. 432:
“The rules of navigation were ordained to prevent collisions, and to preserve life and property embarked in a perilous pursuit, and not to enable those whose duty it is to adopt, if possible, the necessary precautions to avoid such a disaster, to determine how little they can do in that direction without becoming responsible for its consequences in case it occurs.”
When the Louise disappeared behind the Yale under a starboard wheel, as her blasts declared, coming in the direction of the Virginia, *889 the master of the Virginia could and should have ascertained her intention; and while doing so he should have diminished his speed. Rule 21.[1] The collision occurred almost immediately after the appearance of the Louise from behind the port quarter of the Yale. Their aggregate speed was at least 25 miles an hour, at which rate a half mile would be traversed in 1 minute and 12 seconds. She then was certainly less than a half mile from the Virginia,—a fact not known to the latter vessel, hut which could have been known to her.» This want of knowledge caused the nonobservance of rule 3 of the hoard of supervising inspectors for lakes and seaboard, (page 25,) to which the treasury department had called special attention by circular, 25th February, 1878.[2] The sailing vessel interposed between these steamers increased the responsibility of each. Both of them had special duties as to her. Her action might have at any time compelled either of them to a sudden movement to keep out of her way. It was a situation demanding the greatest vigilance. The full speed of the Virginia, as the -event showed, prevented her from adopting such measures as would have avoided collision. If she had not been going at this rate of speed, her course could have been checked, and the Louise would have cleared her. This speed contributed to the collision, and was a fault. The decree of the circuit court is affirmed, with interest; the costs of the appeal to be paid by the appellants.

“Every steam vessel, when approaching another vessel so as to involve risk of collision, shall slacken her speed, and, if necessary, stop and reverse. ***”

 Rule 3. “If, when steamers are approaching each other, the pilot of either vessel fails to understand the course or intention of the other, whether from signals being given or answered erroneously, or from other causes, the pilot so in doubt shall immediately signify the same by giving several short and rapid blasts of the steam whistle; and, if the vessels shall have approached within a half mile of each other, both shall he immediately slowed to a speed barely sufficient for steerage way until the proper signals are given, answered, and understood, or until the vessels shall have passed each other. ”