## THE COTOPAXI.

Circuit Court of Appeals, Second Circuit. July 5, 1927.

No. 366.

1. **Collision** ⚖==96—Starboard hand rule held inapplicable to collision of steamship and tug coming out of slip.

Starboard hand rule *held* inapplicable to case of collision of steamship with tug coming out of slip from behind steamer.

2. **Collision** ⚖==99—Steamer, colliding with tug coming out of slip, held negligent in failing to have special lookout.

Steamer, colliding with tug coming out of slip from behind another steamer, *held* negligent in failing to have special lookout.

3. **Collision** ⚖==96—Steamer, colliding with tug coming out of slip, held at fault in failing to promptly reverse on seeing tug.

Steamer, colliding with tug coming out of slip from behind another steamer, *held* at fault in failing to promptly reverse on seeing tug.

4. **Collision** ⚖==99—Tug, coming out of slip alongside steamer, held negligent in failing to maintain proper lookout.

Tug, coming out of slip close alongside steamer, *held* negligent in failing to keep proper lookout, and liable for half of damages for collision with steamer.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the Compania Cubana De Navegacion against the steamship Cotopaxi; the Clinchfield Navigation Company, Inc., claimant. Decree for libelant, and claimant appeals. Reversed and remanded, with directions.

Libelant's tug Saturno left a lighter along the bulkhead beyond the San Jose Pier No. 4 in Havana harbor and started out to take a barge from a vessel at anchor in the harbor. After the Saturno had left her lighter and started away, she blew a whistle, stopped alongside the steamship Cadiz, a freighter about 450 feet long, which lay bow in at the pier, her stern high out of the water, and projecting about 15 feet beyond the pier line. The master of the Saturno testified that he did not blow any other whistle after she "got to the stern of the Cadiz." The Saturno was 75 feet long and the pilot house was about 5 feet above the deck and about 25 feet from her bow. As her master brought his tug beyond the stern of the Cadiz out into the channel, he first saw the Cotopaxi coming up the harbor bound for a coal dock some distance beyond San Jose Pier No. 4. The Cotopaxi, having the Saturno on her starboard side, blew one whistle and ported her helm in order to pass under the stern of the Saturno. The latter did not keep her course and speed, but reversed, because she had not room to pass in front of the Cotopaxi, and the Cotopaxi collided with her on the port side and sunk her.

There was a dispute as to whether the Saturno blew a whistle at any time, but, even according to the testimony of her own witnesses, she did not blow as she emerged from the stern of the Cadiz. Her master testified that she stopped alongside the Cadiz. The testimony nowhere indicates the duration of this stop, which was evidently made after she blew her whistle, and there is no evidence of how long it was between the time when

the whistle was blown and the time when the Saturno passed beyond the stern of the Cadiz. She was only from 13 to 16 feet from the Cadiz when she passed out into the stream. By far the most important dispute of fact was as to the place of collision. Some of the witnesses for the Cotopaxi placed it 300 feet or more off the pier ends, and considerably to the west and beyond the point where the Cadiz was moored, but the trial judge found that it was very close to her. Hernandez, the tally clerk of the Ward Line, who was on the Saturno at the time of the collision, located the rear section of the wreck of the Saturno as only about 20 feet off the stern of the Cadiz. Bestard, the master of the Saturno, said, when he first saw the Cotopaxi, she was from 32 to 39 feet from the Cadiz, and that when the Saturno emerged from the stern of the Cadiz she was only from 13 to 16 feet from her. Furthermore the Cotopaxi had to pass between the Cadiz and a vessel called the Indianic, which lay only 180 feet to the south of the Cadiz. The Cotopaxi not only had to traverse this narrow strip of water, but sharply ported in her first attempt to pass to the stern of the Saturno. Such a maneuver must have brought her very close to the stern of the Cadiz when the collision occurred, as the trial judge found. The rough log of the Cotopaxi confirmed this location, for that indicates that the Cotopaxi blew to the Saturno when "by stern of Cadiz." If she was then passing through a strip of water only 180 feet wide that separated the Cadiz from the Indianic, and porting to go under the stern of the Saturno, she must have been close to the Cadiz.

Neither vessel maintained a lookout, and the chief officer, who was at the bow of the Cotopaxi for other purposes, though seeing the Saturno as she emerged from the stern of the Cadiz, did not communicate with the bridge.

The rough log of the Cotopaxi states that the Saturno came out of her slip "dead slow," so that her claim that the speed of the tug was excessive is unfounded.

The Cotopaxi did not reverse until her pilot says he was from 40 to 50 feet from the Saturno. Before that he had only stopped his engines and ported.

The trial judge found the Cotopaxi solely at fault (1) in regarding the starboard hand rule as applicable instead of the rule of special circumstances; (2) in proceeding so close to the pier ends without having a lookout forward; (3) in failing to observe the slip whistle from the Saturno; and (4)

in failing to reverse her engines immediately upon seeing the Saturno.

Crowell & Rouse, of New York City (E. Curtis Rouse, of New York City, of counsel), for appellant.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and Frederic Conger, both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). [1] There can be no doubt that the starboard hand rule did not apply to this case. The Saturno was not navigating upon a course, but was leaving a pier preparatory to entering upon her course. It is perfectly settled by familiar authority that the situation is one of special circumstances, governed by article 27 of the International Rules. The Servia, 149 U. S. 144, 13 S. Ct. 877, 37 L. Ed. 681; The John Rugge (C. C. A.) 234 F. 861; The Washington (C. C. A.) 241 F. 952; The M. Moran (C. C. A.) 254 F. 766. It is contended that the place from which the Saturno emerged was not a slip, because a wide basin intervened of about 1,200 feet in width between Pier 4 and the next pier to the west. We can see no merit in such an attempted distinction. It is true that the Saturno might have moved out into the channel from a point much farther westward from the stern of the Cadiz than the place she chose. The reason that the starboard hand rule does not apply to a vessel leaving a pier is, not that another pier is close to it, but because in such a situation she is not and cannot be navigating on a steady course. Possibly, if the Saturno had been coming out diagonally from the eastern end of the wide basin, in such a way that she was proceeding through it and out on a steady course down the harbor to pick up her next load, there might have been some cause to argue that she was a vessel on the starboard hand of the Cotopaxi, to which articles 19 and 21 of the International Rules would apply. But she was on no such course. She approached the channel hidden by a large vessel moored at the pier and close to the Cadiz, and was not navigating on a course at all.

[2] We think it also clear that the Cotopaxi was negligent in passing through the narrow space between the Cadiz and the Indianic, and necessarily close to the pier ends, without having a special lookout. At any time some vessel might have emerged from behind the high stern of the Cadiz and come

into close proximity to the Cotopaxi. It is not a question of harbor regulations of which we have no proof, but of a reasonable precaution applicable to the situation in hand. It is argued that the pilot could see the Saturno as well from the bridge as could a lookout in the prow. When one remembers how low the tug lay and how close she was to the Cadiz, riding high out of the water, the argument is not satisfactory. We cannot say that a proper lookout might not have reported the Saturno to the bridge some time before the pilot could descry her. The District Judge rightly held that the absence of a lookout in these circumstances was a fault.

[3] It was likewise a fault on the part of the Cotopaxi that she did not promptly reverse on seeing the Saturno so close to her. The whole case of the Cotopaxi is really built upon the supposed application of the starboard hand rule. To justify her claim that it applied, and doubtless in hope of showing that the Saturno was on a steady course, some of the witnesses attempted to place the collision much farther from the pier end than it really was. But that the Cotopaxi, whatever may have been the theory of her pilot, ported her helm and tried to pass inside the Saturno, seems unquestionable, and that was her initial and most serious error. It prevented her from checking her headway to the utmost when danger was very imminent. The failure to reverse promptly was an added fault. The Stanmore, L. R. 10 P. D. 134; The Manitoba, 122 U. S. 97, 7 S. Ct. 1158, 30 L. Ed. 1095.

[4] In spite of the above errors in navigation, which rendered the Cotopaxi undoubtedly liable in damages, we must regard the Saturno as also gravely in fault. We are referred to no regulation for the harbor of Havana requiring a vessel to blow a whistle when leaving a slip, but we regard it as plainly negligent for a vessel to emerge from a hidden place into a frequented channel without giving ample warning of her approach, and without maintaining a vigilant lookout in such a situation. The Saturno took neither precaution. She blew her so-called slip whistle, not as she emerged, but some time before, even prior to the time when she "stopped alongside the Cadiz." If she had had a lookout on her bow, she would have seen the Cotopaxi sooner than she did and would have had 25 feet more within which to check her headway and back into the slip. The distances were short, and the vessels all were dangerously close. Such an item of 25 feet was important. For a small tug to emerge from behind a big steamer into a frequented channel, without a lookout and without warning, was a fault so serious as to call for a division of the damages.

The decree is reversed, with costs, and the cause remanded to the District Court, with directions to enter the usual decree for half damages.