## THE ESSO ANNAPOLIS.

### DENCH & HARDY CO. v. THE ESSO ANNAPOLIS.

No. 882.

District Court, D. Massachusetts.

Jan. 21, 1942.

G. Philip Wardner, of Boston, Mass., for libelant.

Fitz-Henry Smith, Jr., of Boston, Mass., and Eugene F. Gilligan, and Kirlin, Campbell, Hickox, Keating & McGrann, all of New York City, for claimant.

SWEENEY, District Judge.

In this proceeding in admiralty the owner of the Motor Fishing Vessel Angie & Vence seeks to recover damages for the sinking of its vessel which occurred in a collision with the Tank Steamship Esso Annapolis, hereinafter referred to as the Esso.

Findings of Fact.

The collision occurred on the high seas off Chesapeake Lightship, latitude 36° 55′ north, and longitude 74° 38′ west, on February 7, 1940, at about 9:45 p. m. It was a clear night with a fresh northwest wind blowing. The proper navigating lights of both ships were burning brightly. The Angie & Vence was a 32 net ton fishing vessel, 80 feet in length over all, with a top speed of approximately 8½ knots. The Esso is a 6,613.7 net ton oil tanker, 553 feet over all, with a top speed of approximately 18 knots.

[redacted] Just prior to the collision, the Esso was pursuing a course on 15° true at a speed of 16 knots. The Angie & Vence was pursuing a southwesterly course at 8 knots. There can be no serious contention that the Angie & Vence was without fault. At approximately 9 o'clock on the evening of the accident, the captain of the Angie & Vence turned the wheel over to one of the fishermen, Rosario Russo, with directions to maintain a southwest course until the vessel reached shallow water suitable for fishing. Another fisherman, Orlando, was placed on watch on the forward part of the vessel. Orlando saw the lights of the Esso about ten minutes before the collision, but, instead of remaining on watch, as was his duty, went below for a cup of coffee, and did not come up on deck again until after the collision had occurred. So that from the time he went below, which was just after sighting the Esso, the wheelman, Russo, was the only person above deck. This alone is sufficient to charge the Angie & Vence with fault. See The Ottawa, 3 Wall. 268, 18 L.Ed. 165.

The Angie & Vence has further been charged with fault in making a sudden turn to port towards the Esso just before the collision. This maneuver was partly due to the fact that the wheelman, Russo, had not observed the approaching Esso until he saw her bearing directly towards him when she was only a very short distance away. As a result, he became confused, and, misjudging the speed of the oncoming tanker, tried to dodge her by turning to port, which caused him to steer directly into the Esso. This faulty move on Russo's part, made as it was in extremis. would not relieve the Esso from fault if she were responsible for creating the emergency situation. Nevertheless, it might not have been made had there been a proper lookout on the Angie & Vence who had given Russo timely warning of the tanker's approach. I find that the Angie & Vence was at fault for not maintaining a proper lookout.

[redacted] The next question is whether the action of the Esso and her crew contributed to the collision. The Angie & Vence, being clearly at fault, must maintain the burden of proving that the Esso was also at fault. See The Eagle, 9 Cir., 289 F. 661, 663, and cases cited therein.

[redacted] From the mass of conflicting testimony, I find that the Esso first sighted the Angie & Vence about two points off her starboard bow. At that time only the white range lights and red side light of the Angie & Vence were visible. The green side light did not show to the Esso. The vessels at this time were well over a mile apart. While various witnesses for the Esso contend that the fishing vessel pursued an erratic serpentine course, I do not find this to be a fact, except, as previously stated, that the fishing vessel did make a sharp port turn just before the collision. When the range lights and red light of the Angie & Vence were sighted by the Esso off the Esso's starboard bow, the Angie & Vence was proceeding on a southwest course which she maintained until just before the collision. She was therefore heading across the course of the Esso at about a 25° angle; the position of the respective vessels thus constituting a crossing course within the meaning of Article 19 of the International Rules for Navigation, 33 U.S. C.A. § 104. This imposed upon the Esso the burden of keeping out of the way of the Angie & Vence. The relative positions and distance between the vessels were apparently misjudged by the Esso, but, when it was ascertained that the Angie & Vence was crossing her course, the Esso ordered a hard right rudder. At no time did the Esso slacken her speed, nor sound any signal until the very moment of the collision.

[redacted] The Esso was the burdened vessel, and it was her duty to slow down if there was any doubt as to her ability to safely clear the Angie & Vence. See The City of Rome, D. C., 24 F.2d 729, 732, and cases cited. See, also, Article 23 of the International Rules for Navigation, 33 U. S.C.A. § 108. That there should have been doubt as to the Esso's ability to clear the Angie & Vence is proven by the fact that, despite the hard right rudder for a full period of two minutes before the collision, she, nevertheless, brought herself in a position bearing directly down on the Angie &

Vence at a very high rate of speed. Further, the accident might well have been avoided had the Esso given a signal whistle indicating the course she was taking, after she had turned her rudder hard right. In making this starboard turn, in an attempt to avoid crossing ahead of the Angie & Vence, which might have violated Article 22 of the International Rules for Navigation, 33 U.S.C.A. § 107, the Esso was thereby taking a course "authorized or required" by the International Rules for Navigation within the meaning of Article 28, 33 U.S.C.A. § 113, and therefore should have indicated this change of course by sounding the proper signal. Had she done so, thereby warning Russo of her approach and course, the collision might have been avoided by the Esso.

The final maneuver of the Angie & Vence in turning hard to port just before the collision does not free the Esso from fault as this turn was made in extremis, and would not have occurred if the Esso had not brought herself into such close proximity without warning and at such a high rate of speed. Compare, The Arkansan, 9 Cir., 112 F.2d 230; The Comus, 2 Cir., 19 F.2d 774; The Manitoba, 122 U.S. 97, 7 S.Ct. 1158, 30 L.Ed. 1095.

From the foregoing, I find that the Esso was likewise at fault.

### Conclusion.

I rule that both vessels were at fault and that a decree for half damages may be entered after the usual reference to ascertain damages.