ALGONQUIN DEEP SEA RESEARCH
CORP., as owner of the F/V EN-
DEAVOUR, Plaintiff,

v.

PERINI CORP., as owner of the TUG
GORHAM H. WHITNEY, et al.,
Defendants.

Civ. A. No. 69–157–T.

United States District Court,
D. Massachusetts.

Jan. 26, 1973.

**562**

Leo F. Glynn, Richard A. Dempsey, Glynn & Dempsey, Boston, Mass., for plaintiff.

Frank J. Maley, Mendes & Mount, New York City, Frank Handy, Kneeland, Splane and Kydd, Boston, Mass., for defendants.

## OPINION

TAURO, District Judge.

This matter arises from a collision on January 21, 1969, between the F/V Endeavour (owned by plaintiff), and the tug Gorham H. Whitney (owned by defendant). The district court found the Endeavour solely at fault and dismissed plaintiff's complaint. The Court of Appeals, 457 F.2d 755, 758, finding both parties at fault, reversed the district court and remanded the case "with directions to award the plaintiff one half its damages."

In accordance with the mandate of the Court of Appeals, the parties were heard on oral argument and briefs were submitted with respect to damages. Neither party offered any additional evidence.

Three issues now present themselves for determination: 1) the extent of physical damage suffered by the Endeavour; 2) detention damages; 3) interest.

### PHYSICAL DAMAGE

With respect to the physical damage suffered, the parties stipulated that "the fair and reasonable value of the repairs is $41,500." Consistent with the mandate of the Court of Appeals, the plaintiff is awarded one-half this figure, $20,750, for its physical damage.

### DETENTION

Following the collision, the Endeavour lay alongside the Fairhaven Marine Shipyard, where on February 25, 1969, she incurred subsequent flood damage during a storm.[1] The vessel was towed to Fish Island in New Bedford where she now rests. Plaintiff has not yet effected repairs on the Endeavour, repre-

---

1. This damage was not included in the $41,500 estimate made on February 12, 1969, and agreed to by the parties at trial.

senting at oral argument a lack of sufficient funds to do so.

Plaintiff's position is that the parties had stipulated at trial that the fair and reasonable cost of repairs was $41,500 and that the reasonable detention period was nine weeks. According to the plaintiff the only questions remaining to be resolved are 1) the amount of detention and 2) the award of interest.

In support of its position, the plaintiff calls attention to the following representations made by counsel to the trial court.

> "Mr. Dempsey. The parties have agreed, your Honor, that Algonquin Deep Sea Research Corporation was the owner of the Endeavour at the time of the collision.
>
> They have agreed that the fair and reasonable value of the repairs is $41,500.
>
> They have agreed that the reasonable period of time to accomplish these repairs is nine weeks, nine weeks detention.
>
> The plaintiff rests, your Honor."

II Transcript 108–109.

Defendant's position at oral argument was somewhat vague and inconsistent, but basically amounted to a disclaimer of any stipulation as to detention.

The representations of counsel to the court were clear and unambiguous. Counsel spoke of "detention," a word of art. If plaintiff's counsel overstated the stipulation, defendant's counsel had an obligation to correct the record then and there, not two years later at a hearing on damages.

■ Read in context with the parties' stipulations as to physical damage, one which the defendant does not now seek to disown,[2] it appears clear that these questions of damages were agreed upon by the parties to obviate the necessity of presenting evidence with respect to them. It is unlikely that plaintiff would have rested without presenting evidence as to damages unless these issues had been resolved by agreement. It may be that the defendant entered into its stipulation as to damages confident of prevailing on the question of liability. Nonetheless the defendant cannot untie itself from an agreement announced in open court. Stipulations entered into by parties are binding. Moore-McCormack Lines v. The Esso Camden, 244 F.2d 198, 203 (2d Cir. 1957). See also Stanley Works v. FTC, 469 F.2d 498, 506 (2d Cir. 1972).

While I find that defendant has already stipulated at trial that plaintiff is entitled to detention damages, plaintiff need not rely upon this agreement, because its request for detention damages is well supported in the law.

■ Detention, or demurrage, is an established element of damage designed to compensate the owner for the loss of use of a vessel during the period reasonably necessary to make repairs following a collision. The Conqueror, 166 U.S. 110, 125, 17 S.Ct. 510, 41 L.Ed. 937 (1897).

Damages are computed by determining gross profits and deducting all expenses saved. Nicodemisen v. O/S/F/V Dartmouth, 157 F.Supp. 339, 341 (D. Mass.1957).

■ Defendant contends, however, that plaintiff is not entitled to such compensation because 1) loss-of-profit damages are too speculative since this was the Endeavour's first voyage; 2) plaintiff has not yet effected repairs on the Endeavour. This court finds neither contention persuasive.

The Endeavour was outfitted for deep-sea lobster fishing, and was returning from her first such voyage when this collision occurred.[3] In the case of

---

2. As a matter of fact defendant tendered payment of $21,815.92 in furtherance of such stipulation on November 20, 1972. *See* Affidavit of Frank H. Handy.

3. The transcript seems to indicate that there was a prior voyage which was abandoned because of the weather. The briefs and oral arguments assume one voyage

fishing vessels only partially damaged,[4] detention damages are based upon the vessel's "probable net earnings in the enterprise to which she was devoted." The Menominee, 125 F. 530, 535–536 (E.D.N.Y.1903).

■■■ Reimbursement for detention is allowed when potential profits have been lost because of loss of use. Such potential loss cannot be speculative, but must be established with reasonable certainty. The Conqueror, 166 U.S. 110, 125, 17 S.Ct. 510, 41 L.Ed. 937 (1897). The plaintiff has met these requirements. Captain Sousa of the Endeavour, who had had prior experience in lobster fishing, gave unchallenged and uncontradicted testimony at trial (I Transcript 35–40; II Transcript 2–3) as to the vessel's net earnings on its sole voyage and his opinion as to probable future earnings based on that voyage and his overall experience in the field.[5] No evidence on these points was offered by the defendant. Captain Sousa was not even cross-examined on the points in question.

Although courts have at times used a "three-voyage rule" to arrive at detention damages,[6] such a rule is not mandatory. The Gylfe v. The Trujillo, 209 F. 2d 386, 389 (2d Cir. 1954). Other appropriate measures of damages have been utilized to fit particular fact situations.[7] The imposition of a universal three-voyage rule would prejudice severely and unfairly boat owners, such as the plaintiff, who suffer damage on a maiden voyage due to at least the concurring negligence of another. This is particularly true when, as in this case, there is unchallenged and uncontradicted evidence as to probable earnings. Compare Johnson's Branford Boat Yard, Inc. v. Yacht Altair, 260 F.Supp. 841, 846 (D.Conn.1966), where there was insufficient proof of any history of charter for a boat kept for recreation. "[A]s anticipated earnings of the vessel cannot always be certainly ascertained and definitely proven, it suffices if they are proven circumstantially and with a reasonable degree of certainty." Aktieselskapet Bonheur v. San Francisco & P. S. S. Co., 287 F. 679, 682 (9th Cir. 1923).

■■■ Defendant cites no authority to support his position that detention damages should not be awarded because the Endeavour has not yet been repaired, nor has the court been able to find any authority for such a proposition. A plaintiff financially unable to repair his ship before trial should not be deprived of damages to which he would otherwise be entitled.

Plaintiff is thus entitled to detention damages to be computed as follows: During the nine week detention period,

and this decision is based on such assumption. The circumstance of a second voyage would not effect the merits.

4. The stipulation of the parties that the reasonable time for repair is nine weeks indicates that the Endeavour cannot be considered a total loss.

5. The settlement sheet for the interrupted collision voyage indicated a gross stock of $3,317.00 and a net stock of $2,925.66. The Captain testified that the Endeavour had caught over 5,000 pounds of lobsters, which were selling at $.95 to $1.05 per pound, but that after the collision a lot of the catch was lost, thus explaining the $3,317 figure. II Transcript 2–3. The Captain further testified that he expected the Endeavour would have made two and one-half trips a month, with between $7,000 and $10,000 gross receipts and expenses of $485 on each trip. I

Transcript 35–37. The owner's share was 40% of the amount left after deduction of expenses. I Transcript 37.

6. See, e. g., The Bulgaria, 83 F. 312 (E.D. N.Y.1897), in which the court used the average profits during the trip of the collision and the trips immediately preceding and succeeding it.

7. See, e. g., The Europe, 190 F. 475, 482 (9th Cir. 1911), using an average of per diem profits for the preceding five years; Simpson v. State of California, 54 F. 404, 407 (9th Cir. 1893), using the average daily earnings for a period of six months prior and six months subsequent to the collision; The Gylfe v. The Trujillo, 209 F.2d 386, 389–390 (2d Cir. 1954), ruling out consideration of the pre-collision voyage because the market had gone into a sudden decline.

the Endeavour would have made 5 trips, each grossing $8,500, with approximately $500 in expenses per trip, amounting to $40,000 in total net earnings. The owner's 40 percent share is $16,000. Under the divided damage award, plaintiff is hereby granted $8,000.

## INTEREST

The award of interest in admiralty is a matter of the court's discretion. III Benedict on Admiralty Section 419, at 191 (6th ed. 1940); Nicodemisen v. O/S/F/V Dartmouth, 157 F.Supp. 339, 341 (D.Mass.1957). Interest is usually awarded whenever damages lawfully due are withheld, unless exceptional circumstances exist justifying refusal, such as long delay in pressing the claim. The Wright, 109 F.2d 699, 702 (2d Cir. 1940).

Defendant argues that plaintiff is not entitled to interest on his damages because 1) the mandate of the Court of Appeals is silent as to interest on his damages; 2) both parties have been found to be at fault; 3) plaintiff has not yet effected repairs on the Endeavour.

This court is not persuaded by defendant's contention that the circuit court's instruction that the plaintiff be awarded one-half its "damages," with no mention of "interest," mandated that the plaintiff be denied interest. In the absence of instructions to the contrary, a district court directed to award damages may assume that it retains the discretion traditionally ancillary to the resolution of issues on damages.

Lombard v. Elliott, 77 F.2d 496 (5th Cir. 1935) is not authority to the contrary. In a situation similar to this the district court elected not to award interest following a mandate from the circuit court which was silent as to interest. On appeal, it was held that the district court interpreted the mandate correctly. Simply stated, the circuit court did not mandate one way or the other with respect to interest which had been originally awarded by the district court and the district court concluded correctly that it retained discretion to reverse its prior decision as to interest.

While there is authority for denying pre-decree interest in mutual fault collision cases (see The Wright, 109 F.2d 699, 702 (2d Cir. 1940)), more recent cases have granted interest in such situations. See, e. g., National Marine Service, Inc. v. Talley, 348 F.2d 589 (5th Cir. 1965); Lady Nelson, Ltd. v. Creole Petroleum Corp., 286 F.2d 684, 688 (2d Cir. 1961); The Hannah A. Lennen, 77 F.Supp. 471, 472–473 (D.Del.1948). See also, The Manitoba, 122 U.S. 97, 7 S.Ct. 1158, 30 L.Ed. 1095 (1886), in which the court, in a mutual liability situation, allowed interest on damages from the date of collision for one of the vessels involved.

This court is, however, persuaded that plaintiff should be denied pre-decree interest on his repair damages, because no money has yet been expended for repairs and detention damages have been awarded for loss of use. Granting both detention, which provides the owner a return on his capital investment, and interest on the cost of repairs prior to such an expenditure being made, would put the owner in a better position than he would have been had the collision not occurred. See The Hygrade No. 24 v. The Dynamic, 233 F.2d 444, 447 (2d Cir. 1956).

Plaintiff is awarded interest only on his damages for detention,[8] at the rate of 6 percent per annum,[9] from the date of collision to the date of tender.

---

8. Interest is generally allowed upon damages for detention caused by collision. I Benedict on Admiralty Section 106, at 314 n. 37 (6th ed. 1940); The J. G. Gilchrist, 173 F. 666, 672 (W.D.N.Y. 1909), affm'd 183, F. 105.

9. Nicodemisen v. O/S/F/V Dartmouth, 157 F.Supp. 339, 341 (D.Mass.1958).