### WORMSER BROS. et al. v. F. MARROQUIN & CO.

(Circuit Court of Appeals, Fifth Circuit. March 11, 1918.)

No. 3046.

1. SALES ⬚⟶53(1)—ACTIONS—EVIDENCE.

In an action for the value of corn sold under a contract entered into in Mexico when that country was in a state of great disorder, which required the buyer to assume all risks of loss in transportation, provided communications were open, the question whether communications were open at the time of shipment *held*, under the evidence, for the jury.

2. SALES ⬚⟶201(2)—CONTRACTS—LIABILITY OF BUYERS.

Where a contract for the sale of corn in Mexico required the buyer to assume all risks of loss during transportation and to pay drafts with bill of lading attached on presentation, the seller cannot recover for corn loaded in cars, which was destroyed by fire prior to shipment.

3. PAYMENT ⬚⟶12(5)—CONTRACTS—ACTION—EXTENT OF RECOVERY.

Where, pursuant to a contract made in Mexico for the sale of corn, the buyer deposited $500 to the credit of the seller, the deposit must, as the price of the corn was fixed in Mexican currency, be deemed to have been made in that medium; so, on a suit in the United States involving the contract, the seller could not be charged $500 in United States money, a Mexican dollar at the time of the deposit having been worth only 44 cents in the currency of the United States.

In Error to the District Court of the United States for the Southern District of Texas; Waller T. Burns, Judge.

Action by F. Marroquin & Co. against Wormser Bros. and the Laredo National Bank, in which Wormser Bros. filed a cross-action. There was a judgment for plaintiffs, defendants Wormser Bros. also recovering on their cross-action, and defendants bring error. Reversed and remanded.

A. Winslow and Paul W. Evans, both of Laredo, Tex., for plaintiffs in error.

Hal W. Greer and A. C. Hamilton, both of Laredo, Tex., for defendants in error.

Before WALKER and BATTS, Circuit Judges, and FOSTER, District Judge.

BATTS, Circuit Judge. Marroquin & Co. instituted suit against Wormser Bros. for the value of five carloads of corn, alleged to be worth $3,228.92. The contract is evidenced by telegrams which passed between the plaintiffs and defendants. A number of letters, copies of which were introduced by plaintiffs, were not, according to the evi-

dence introduced by the defendants, received by them. It is not necessary to determine whether the objections to the introduction of these letters were well founded, as the case may be disposed of without giving them consideration.

The transaction was initiated by two telegrams on October 6, 1913, from Julio Wormser to F. Marroquin & Co., the telegrams being sent from Nuevo Laredo, Tamaulipas, to Monterey, Nuevo Leon. The first of these telegrams the defendants deny sending, and is to this effect:

"Wire to Wormser Brothers, Laredo, Tam., best price of corn by carload lots for immediate shipment."

The second was as follows:

"Wire to Wormser Brothers, Laredo, Tam., best price of white corn in bulk to be shipped when communication is opened."

On October 7th, Marroquin wired in reply:

"We oblige you five carloads at the price understood depositing five hundred dollars and authorizing us to send draft attached to bills of lading. We sell on no other conditions."

On the same day Wormser Bros. wired Marroquin:

"We accept five carloads at your conditions. Please notify us when you have more. Letter follows."

Also on that day Wormser Bros. wired:

"We will take five cars, shipping when communication is open. You confirming. We will give instructions as to shipping."

On October 8th Wormser Bros. wired Marroquin:

"We accept five carloads at your conditions this morning. Laredo National Bank will wire deposit of five hundred dollars to your credit."

On the same day Marroquin wired Wormser Bros.:

"We received your order for five carloads and we have accepted it. We are waiting to hear from the bank, and draft must be paid at presentation before we make first shipment."

Wormser Bros. on the same day wired Marroquin:

"We wrote to-day giving instructions as to shipment. Payment consigned to Laredo National Bank."

On October 9th Laredo National Bank wired Marroquin:

"We will pay at presentation of bills of lading insurance policies and drafts the value of five carloads of corn that you will ship to Wormser Brothers."

On October 10th, Marroquin wired Wormser Bros.:

"First carload shipped second and third loaded. Wire consignment. Express your wish to take advantage of opportunity of three carloads same conditions wire immediately."

No letters relative to the contract and no other telegrams with reference thereto were received until after delivery of three carloads of the corn to the railroad. A member of the firm of Marroquin & Co.

testified that he took bills of lading on the three cars shipped in the name of F. Marroquin & Co., and consigned them to the same, so as to afterwards indorse them to Wormser Bros. That there were trains from the 6th to the 18th of October, 1913, and that this shipment was made between the 9th and 18th. He testified that he took out three insurance policies, one on each car of the corn shipped, which policies he put in·their safe and sent later to the Mercantile Bank, Monterey, for transmission to the Laredo National Bank. The bills of lading, with drafts attached, were also sent .to the Laredo National Bank through the Mercantile Bank, Monterey. The bills of lading and insurance policies, according to the evidence introduced by defendants, were not received in Laredo until three or four weeks ·later. Subsequent to the shipment of the first three cars, Marroquin & Co. secured additional cars for shipment, but before bills of lading were issued the corn was destroyed by fire.

[1] The trial court directed a verdict for plaintiffs for $2,161.81, and for defendants on their cross-action in the sum of $500. The $2,161.81 is the value of the corn at the price agreed upon in American money, and the $500 is the amount placed to the credit of Marroquin & Co. by the Laredo National Bank. At the time of the transactions detailed there were great disorders in Mexico, and all the parties understood the dangers incident to transportation. It is apparent, from the telegrams sent by Marroquin & Co., that they had no intention of taking any chance as to receiving the purchase price of the corn. They indicated the conditions under which they were willing to sell, and stated that they would sell on no other conditions, and made no consignment of any part of the corn until they had received assurances from the Laredo Bank that $500 of the money had already been paid, and that the drafts for the balance of the purchase price would be paid on presentation. On the other hand, it is quite as apparent that a condition of the sale imposed by defendants was that it was to depend upon communication being open. The testimony of the witness Marroquin indicates that trains were running at the time the bills of lading were issued. Evidence introduced by defendants was to the contrary. Apparently an issue was presented which should have been submitted to the jury.

[2] As to the two cars which were destroyed prior to shipment there does not appear to be any theory upon which Marroquin & Co. are entitled to payment for their value from Wormser Bros.

[3] When Marroquin & Co. drew their drafts on Wormser Bros. the amounts were calculated in Mexican money. The price given by wire was in the same medium. A receipt from the Mercantile Bank of Monterey to the Laredo National Bank is to the effect:

"We have debited your account as follows: Our payment to F. Marroquin & Co., according to your instructions as per duplicate voucher we are inclosing 'herewith, five hundred dollars."

This receipt, executed in Mexico, taken in connection with the circumstance that the price of the corn was given in Mexican money, and that the' drafts were so drawn, would seem to clearly indicate that the $500 paid was· paid in Mexican money. According to the testi-

mony, this was worth at the time 44 cents. Apparently it would be erroneous to charge defendants in error with more than the $220 received.

The judgment is reversed, and the cause remanded for trial in accordance herewith.

Reversed and remanded.