**WICHITA MILL & ELEVATOR CO. v. NAAMLOOZE VANNOOTSCHAP–GREBRS VAN DEN BERGH'S INDUSTRIE EN HANDELMAATSCHAPPY.**

(Circuit Court of Appeals, Fifth Circuit. January 30, 1925.)

No. 4374.

**1. Sales 89—Correspondence held to show agreement that flour was to belong to seller, if decision against him.**

Correspondence between parties to sale of flour, following buyer's rejection because of delay in sailing of vessel, held to show agreement that, if award of arbitrators was in favor of consignee, flour was to belong to shipper, and nothing thereafter to make the flour the property of the consignee.

**2. Sales 134—Consignee of flour, accepting shipment pending arbitration, held entitled on favorable finding by arbitrators to sell and apply proceeds on demand against shipper.**

Where consignee of flour, on learning that it had not been shipped when agreed, gave notice of rejection, but, on shipper's agreement to arbitrate question of whether contract had been complied with, and to pay consignee's loss if arbitrators found against him, paid drafts, held, on award for consignee and failure of shipper to tender amounts expended in paying drafts and handling flour, consignee had right to sell it for highest price obtainable and credit proceeds on its demand against shipper.

**3. Payment 12(5)—Recovery on cause of action accruing in foreign country is amount equivalent to value of claim in foreign money when and where claim accrued.**

Where plaintiff's cause of action accrues in foreign country, and suit is brought in this country, proper recovery by plaintiff is equivalent in dollars of such sum as most nearly approximates in value what plaintiff was entitled to in foreign money when and where demand accrued.

In Error to the District Court of the United States for the Northern District of Texas; William H. Atwell, Judge.

Action by the Naamlooze Vannootschap-Grebrs Van Den Bergh's Industrie en Handelmaatschappy against the Wichita Mill & Elevator Company. Judgment for plaintiff, and defendant brings error. Affirmed.

T. R. Boone and John B. King, both of Wichita Falls, Tex. (T. R. Boone, Leslie Humphrey, and John B. King, all of Wichita Falls, Tex., on the brief), for plaintiff in error.

J. T. Montgomery, of Wichita Falls, Tex., E. R. Morrison and L. Newton Wylder, both of Kansas City, Mo., and E. R. Surles, of Wichita Falls, Tex. (Morrison, Nugent, Wylder & Berger, of Kansas City, Mo., Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, Tex., and E. R. Surles, of Fort Worth, Tex., on the brief), for defendant in error.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

WALKER, Circuit Judge. This suit, brought by the defendant in error (herein referred to as the consignee), grew out of transactions which followed the making, in June, 1921, of contracts between the consignee and the plaintiff in error (herein referred to as the shipper), whereby the latter agreed to sell to the consignee flour "c. i. f. Rotterdam, sailing in July," at stated prices; the term "c. i. f." meaning that the amount payable includes the stated price, insurance, and freight to the point of delivery, and the term "sailing in July" meaning that the ship carrying the flour was to sail from port in July.

The consignee's petition and evidence adduced showed that the shipper shipped by the steamer Cranford flour called for by the contracts, and issued drafts on the con-

signee for the amounts payable under the contracts; that those drafts were paid by the consignee, but that the Cranford sailed, not in July, but in August. The averments of the petition showed that the drafts were paid after the consignee, upon learning that the Cranford sailed in August, gave notice that it would not accept the flour, and after the parties had agreed to an arbitration of the question whether or not the shipper had complied with its contract, the shipper agreeing to pay any loss incurred by the consignee if the arbitrators should determine that the shipper had not' complied with its contract. The arbitrators decided that the shipper failed to fulfill its contracts and that the consignee was entitled to reject the flour.

The petition asserted the right to recover the amount of the difference between the aggregate of the amounts paid by the consignee on the drafts and for lighterage, unloading, warehouse, and insurance charges, and the net amount for which the flour was sold by the consignee. The averments of the petition showed that the claim asserted was not for damages for a breach of the contracts for the sale of the flour, but for the alleged loss incurred by the consignee in consequence of the amount for which the shipper's flour was sold being insufficient to reimburse the consignee for amounts expended by it and chargeable against the shipper, when the consignee had and exercised the right to reject the flour.

Evidence adduced included a correspondence which consisted of many cablegrams and letters from each of the parties to the other. After consignee learned that the Cranford did not sail in July, it sent the following cablegram on August 12th:

"Cranford there is an official report sailed August sixth not according to contract. We will consent if Rotterdam first port for discharging."

After receiving a reply to this cablegram, stating that the Cranford discharges first at Bremen, consignee on August 17th sent the following cablegram:

"Do not agree your shipment have bought July sailing moreover steamer goes first Bremen Hamburg will consider shipment as consignment will sell at best price."

On August 18th the shipper sent the following cablegram:

"Contracted flour with steamship company for steamer scheduled sail July thirteenth think have complied contracts we agree arbitration this point if any loss not responsible for steamers itinerary."

On August 18th consignee sent a cablegram suggesting Raikes as arbitrator. On August 20th shipper cabled as follows:

"We agree Raikes your arbitrator we appointing A. F. Langdon of London our arbitrator. These two appointing if necessary third arbitrator you paying draft we agreeing abide decision arbitrators if any loss."

Thereafter cablegrams and letters were sent, dealing with the matters of paying the drafts before or after the arbitration, as to the price at which the flour should be sold, and as to the sale of it by some one other than the consignee. After the consignee paid the drafts, leaving the loss, if any, to be arbitrated, and after the award of the arbitrators was made, the shipper on October 4th sent the following cablegram:

"Have protested decision umpire pending receipt details quality is good make best possible offer by telegraph if the arbitration is against us we will sell ourselves."

The shipper's letter of the same date contained the following:

"We have not before us the details regarding the decision of the arbitration and would prefer to await the mails giving us these particulars before doing anything further. In the event the arbitration is against us we will desire to resell the flour. * * * We are confident that in a short while your market will advance to what this flour is actually worth or else our market will decline and if the arbitration is against us we would prefer to await a more favorable market on which to sell this flour."

The court ruled to the effect that the consignee paid the drafts and the expenses of handling and selling the flour under such circumstances as to make the shipper liable for the amounts so disbursed, and that the consignee had the right to sell the flour at the highest obtainable price and to apply the net proceeds of the sale on the amount due to it from the shipper. The only question submitted to the jury was: "Did the plaintiff sell the flour for the highest obtainable price, and, if it did, did it suffer any loss?"

[1] It was conceded that the consignee was entitled to reject the flour because the ship which carried it did not sail until during the month of August. We are of opinion that the above-mentioned correspondence required the conclusions that the consignee rejected the flour on August 17th, that the

arbitration agreement concluded on August 20th meant that, if the award of the arbitrators was in favor of the consignee, the flour belonged to the shipper, and that nothing which thereafter occurred had the effect of making the flour the property of the consignee, if it won the arbitration. That the just-stated conclusions are correct is persuasively indicated by the fact that after the drafts were paid by the consignee, and after the award of the arbitrators was made and disclosed to the parties, the shipper in unequivocal terms admitted that the flour was subject to be sold as its property, unless the award was set aside, which did not occur.

[2] There was an absence of evidence tending to prove that after the consignee's rejection of the flour, or after the award was made, the shipper tendered or offered to pay to the consignee the amounts expended by the latter in paying the drafts and in handling the flour. This being so, the consignee had the right to sell the flour (which came under its control upon its paying the drafts) at the highest obtainable price, and credit the net proceeds on its demand against the shipper. Connell Bros. Co. v. Diedrichsen & Co., 213 F. 737, 130 C. C. A. 251; Rubin v. Sturtevant, 80 F. 930, 26 C. C. A. 259.

[3] Evidence adduced tended to prove that the drafts, which were payable in dollars, were paid by the consignee in Rotterdam, Holland, with dollars bought by it with florins, the currency of that country, at the current rate of exchange; that the expenditures of the consignee in handling and selling the flour were made in florins; and that the amounts for which the consignee sold the flour were paid in foreign currency. The right of action asserted having accrued in Holland, and the suit having been brought in this country, any recovery to which the consignee was entitled was payable in dollars, and the proper amount of the recovery was the equivalent in dollars of, or such sum as most nearly approximates in value, what the consignee was entitled to in foreign money, when and where the demand in its favor accrued. Wormser Bros. v. F. Marroquin & Co., 249 F. 428, 161 C. C. A. 402; The Verdi (D. C.) 268 F. 908; 17 Corpus Juris, 720.

The court's rulings were in harmony with the above-stated conclusions. The record shows no reversible error.

The judgment is affirmed.