## MANAGUA NAV. CO. et al. v. AKTIESELSKABET BORGESTAD.

(Circuit Court of Appeals, Fifth Circuit. July 22, 1925.)

### No. 4415.

**1. Collision** ⟻100(2)—**Steamer descending Mississippi river and striking ascending steamer held solely at fault.**

Steamer descending Mississippi river and crossing bow of ascending steamer in fog, at a distance of 200 or 300 feet, and running into right bank of river, and then striking ascending steamer on port side, *held* solely at fault, in view of Pilot Rules for Mississippi River, rule 1, where no lookout was maintained on descending steamer and physical facts indicated she was not being operated at a moderate rate of speed, in accordance with rule 13, similar to International Rules, art. 16 (Comp. St. § 7889), and passing signal of two blasts given by ascending steamer was heard and understood by pilot of descending steamer.

**2. Collision** ⟻81—**Vessel is required to maintain lookout in a fog.**

A vessel is required to maintain lookout in a fog.

**3. Collision** ⟻82(2)—**When steam vessel violates international rule, if unable to stop in time to avoid a collision, stated.**

Steam vessel violates International Rules, art. 16 (Comp. St. § 7889), if she is unable to stop in time to avoid a collision after approaching vessel comes in sight, providing such vessel is herself coming at the moderate rate of speed required by law.

**4. Collision** ⟻100(2)—**Steam vessels have no right to give passing signals except when in sight of each other.**

Steam vessels have no right to give passing signals except when they are in sight of each other, fog signals only being permissible in fog when they cannot see each other under article 18, rule 9 (Comp. St. § 7892), Regulations for Preventing Collisions on Inland Waters.

**5. Collision** ⟻100(2)—**Duty of descending steamer in fog to stop until signals for passing could be given and understood.**

Where steamer descending Mississippi river, due to fog, could not see ascending steamer, it was its duty in view of Pilot Rules for the Mississippi River, rule 1, to stop and back, if necessary, until signals for passing could be given and understood.

**6. Collision ⟨⟩105—Evidence held not to show that steamer with which another collided was coming at full speed ahead.**

Evidence 'held not to show that steamer with which another collided was coming at full speed ahead in the fog.

**7. Collision ⟨⟩100(1)—Ascending steamer held not at fault because she did not back after descending steamer crossed her bow.**

Where steamer descending Mississippi river crossed bow of ascending steamer in a fog at a distance of 200 or 300 feet, and ran into right bank, and then struck ascending steamer on the port side, ascending steamer held not at fault because she did not back after descending steamer crossed her bow, where descending steamer was not then hidden by the fog but her position was known, and it did not appear that, if ascending steamer had undertaken to back she could have avoided collision; rule 13 of Pilot Rules for Mississippi River being inapplicable.

**8. Collision ⟨⟩105—Evidence held to support inference that ascending steamer understood that her signal for passing had been answered by descending steamer.**

Evidence held to support inference that steamer ascending Mississippi river during fog understood that her signal for passing had been answered by descending steamer that collided with her.

**9. Collision ⟨⟩130—Interest is generally allowed from date of the collision.**

Interest is generally allowed from date of the collision.

**10. Collision ⟨⟩130—Interest calculated from a short time after collision between steamships, in view of stipulation.**

In action for damages for collision between steamers, interest on amount of loss will be calculated from a short time after collision, in view of stipulation fixing that date as the time from which damaged steamer would claim interest.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Libel by the Managua Navigation Company and others against Aktieselskabet Borgestad, with libelee filing a libel against libelants. Decree for libelee, and libelants appeal. Modified and affirmed.

Geo. H. Terriberry, Frazer L. Rice, Jos. M. Rault, and Walter Carroll, all of New Orleans, La., for appellants.

John D. Grace and M. A. Grace, both of New Orleans, La. (Edwin H. Grace, of New Orleans, La., on the brief), for appellee.

Before WALKER and BRYAN, Circuit Judges, and BARRETT, District Judge.

BRYAN, Circuit Judge. This case arises out of a collision between the steamships Managua and Borgestad. Both ships were damaged. Appellant, owner of the Managua, filed a libel against the Borgestad, and in turn the owner of the Borgestad filed a libel against the Managua. In each libel the ship proceeded against is alleged to have been solely at fault.

The collision occurred on the Mississippi river, near Belle Chasse Point, about 15 miles below New Orleans. Each ship was in charge of a licensed pilot. The Managua left her dock at New Orleans about 10 o'clock in the morning and proceeded down the river. An hour later she ran into a fog and exchanged fog signals with the Borgestad, which had left McCall's Flat, some 8 miles down the river, that morning at 8:30, after having been anchored during the preceding night because of a fog, and was proceeding up the river. The Managua crossed the Borgestad's bow at a distance of 200 or 300 feet and ran into the right or western bank of the river, sheered off, and then struck the Borgestad, which was within 100 feet of the bank, on the port side, just aft of amidships.

According to witnesses for the Managua, that vessel, after encountering the fog, proceeded at slow speed, which, with the current of about 3 miles per hour, was at the rate of approximately 4 miles per hour. There was no lookout except for 5 minutes when the vessel first encountered the fog. The Managua's pilot testified that he heard the fog signals of another vessel, which proved to be the Borgestad, about two points to port, but that, receiving no passing signal, he had one sounded by the Managua consisting of one long blast, by which he intended to call for a passage port to port, which was not answered; that, after waiting for about a minute, the Managua, at his direction, sounded a second signal of one blast, and in reply to that there was received a signal of two blasts, which he recognized as crossing his signal and indicating a starboard to starboard passage; and that, fearing a collision, he caused the helm of the Managua to be ported and her engines reversed, as a result of which the Managua was sent to starboard, and the collision resulted as above stated.

The pilot of the Borgestad testified that, after leaving McCall's Flat and up to the time of the collision, he occupied a position on the top of the pilot house and had been proceeding, with a lookout on the bow, at slow speed along the western bank of the river, where the fog did not much interfere

with his vision; that just as his vessel passed Belle Chasse Point, and while she was within 100 feet of the western bank, he sighted the masts and smokestack of the Managua, apparently in the middle of the river, at a distance which he variously estimated at from a half to one and a half miles; that the Borgestad then gave a signal of two blasts calling for a starboard to starboard passage, which the Managua accepted by responding with a like signal of two blasts; that, after the passing signals were exchanged, the Managua became hidden from view in the fog, and he did not see her again until she crossed his bow 200 or 300 feet away; that the Borgestad's helm was immediately ported, and she was ordered full speed ahead, but, seeing that a collision was inevitable, the engine was at once stopped and the Borgestad sent to port in an effort to diminish the force of the impact. The Borgestad's chief engineer testified that he was in the engine room from 8 o'clock until the collision occurred. Referring to the log kept by him, he testified in chief that he started the engine at 8:30 and proceeded "with different kinds of speed, slow, half speed, and stop, until 11:03 in the forenoon. Then there was just for a moment a little full speed, a couple of turns, and then stop, and then when the collision happened at 11:13 the engines were stopped." His log contains the following entry:

"The engine was made ready at 8:30 a. m. to proceed. Different speed in the engine, full speed, slow, and stop until at 11:03 a. m. Full speed at 11:10 a. m. then stop. Collision happened at 11:13 a. m. Then the engine was stopped."

After considerable cross-examination, and after testifying that the engine was put full speed ahead between 11:03 and 11:10, this witness, who was a Norwegian, finally stated that the engine was run full speed ahead during the entire 7 minutes from 11:03 to 11:10.

The draft of the Managua was 14 feet forward and 14.8 feet aft, and of the Borgestad 24 feet forward and 22.06 feet aft. The pilot of the Borgestad testified that the Managua, when she ran into the bank of the river, was going at a speed in excess of 6 miles per hour, and was lifted up 5 or 6 feet; and it is admitted that mud from the bank was forced into and choked up the intake of the Managua's starboard circulating pump. The officers and crew of each ship corroborated in the main the testimony of her pilot. The collision occurred on January 4, 1921. One of the libels was filed on January 5 and the other on January 7. Testimony as to liability was taken by deposition, and upon consideration of it the District Judge filed an opinion finding the Managua solely at fault and exonerating the Borgestad. Thereafter the parties agreed by stipulation that the damages to the Borgestad, consisting of repairs and demurrage, amounted to $61,000, and that this sum was paid out by her owner prior to February 9, 1921, and acknowledged the right of the Borgestad to claim interest from that date. A decree was entered in favor of the owner of the Borgestad for $61,000 and costs, but interest was allowed only from May 14, 1924, the date of the decree. A petition has been filed on this appeal in behalf of the Borgestad, praying that interest be allowed on the amount of the decree from February 9, 1921.

[1-5] Clearly the Managua was at fault. It cannot be doubted that it was her duty to maintain a lookout in the fog. Ariadne, 13 Wall. 475, 20 L. Ed. 542. It is doubtless true that her pilot thought the fog signals of the Borgestad came from the port side of his ship, but the presence of a lookout in a better position to hear might well have resulted in correcting the pilot's mistake and preventing the maneuver to starboard, where the Borgestad actually was. While there is a conflict in the testimony of the witnesses as to the speed of the Managua in the fog, yet the physical fact that she ran into the bank with force enough to be raised up, and then to slide off with sufficient momentum remaining to run still further and into another vessel, sustains the inference that she was not being operated at a moderate rate of speed. She was therefore violating rule 13 of the Pilot Rules for the Mississippi River, which is practically the same as article 16 of the International Rules (Comp. St. § 7889). A steam vessel violates this rule if she is unable to stop in time to avoid a collision, "after the approaching vessel comes in sight, providing such approaching vessel is herself coming at the moderate rate of speed required by law." The Umbria, 166 U. S. 404, 417, 17 S. Ct. 610, 41 L. Ed. 1053. See, also, The Anna (C. C. A.) 297 F. 182. The evidence is in irreconcilable conflict as to the passing signals, but it is admitted that the passing signal of two blasts given by the Borgestad was heard and understood by the pilot of the Managua. There is some basis in the testimony to sustain the inference that

the two single blast signals, which it is claimed were given by the Managua, were fog signals. The Managua's pilot says they were given a minute apart, that the first one was a long blast, which very well describes a fog signal. But, assuming that the second signal of the Managua was a short blast, and therefore intended as a passing signal, it would then be in violation of pilot rule 1, which requires the ascending steamer to give the first signal. Besides, steam vessels have no right to give passing signals except when they are in sight of each other. In a fog, when they cannot see each other, fog signals only are permissible. Article 18, rule 9, Regulations for Preventing Collisions on Inland Waters, 30 Stat. 101 (Comp. St. § 7892). According to pilot rule 1, it clearly was the duty of the Managua to stop, and back if necessary, until signals for passing could be given and understood.

[6] But it is insisted in behalf of the Managua that the Borgestad was also at fault, and that at least the damages should be divided. The particulars in which the Borgestad is blamed for the collision are that she was coming full speed ahead in the fog for a period of 7 minutes while hearing the Managua's fog whistle forward of her beam, for not going full speed astern after the Managua crossed her bow just before the collision, and for not blowing the danger signal. The contention that the Borgestad was coming full speed ahead is based entirely upon the testimony of the chief engineer given on cross-examination. That witness did not purport to give his independent recollection of the speed maintained by the Borgestad, but only attempted to explain and interpret the entry which he made in the engineer's log book. The quoted entry is silent as to what orders were received in the engine room for the 7-minute period between 11:03 and 11:10. Taking his whole testimony, and considering that he was testifying in a language which was foreign to him, it is not apparent that he ever intended to admit the engine was being run full speed ahead continuously just prior to the collision or at all except for a "couple of turns." Against the engineer's alleged admission is the testimony of the pilot and the officers on the bridge of the Borgestad, as well as the absence of testimony by any of the witnesses on the Managua complaining of the speed of the Borgestad. As far as appears, the Borgestad was proceeding cautiously up the river. She had taken almost 3 hours to cover a distance of approximate-

7 F.(2d)—63

ly 8 miles. She was in a position near the bank on the point, in compliance with a long-established custom on the Mississippi river that ascending vessels should run the points and descending vessels should run the bends. Albert Dumois, 177 U. S. 240, 249, 20 S. Ct. 595, 44 L. Ed. 751; Shirley v. Richmond, Fed. Cas. No. 12,795.

[7] She was at a regular crossing place for ascending vessels, but, in obedience to pilot rule 5, did not attempt to cross the river because of the nearness of a descending steamer. Nor in our opinion was the Borgestad at fault because she did not back after the Managua crossed her bow. Pilot rule 13 is hardly applicable to the situation. The Managua was not then hidden by the fog, but her position was known. The Borgestad was confronted with a sudden emergency. It cannot be asserted with any degree of certainty that, if she had undertaken to back, she could have avoided the collision. She was struck aft of amidships, and the only probable result of such a maneuver would have been that she would have been struck further forward. The failure of the Borgestad to sound the danger signal would undoubtedly have been a fault, if she had not understood that the Managua had answered her passing signal.

[8] It is possibly true, as suggested by the District Judge, that the Borgestad's pilot heard the whistle of some other steamer and mistook it for an answering signal from the Managua. At any rate, there is ample evidence to support the inference that the Borgestad understood that her signal for passing had been answered. If that be true, nothing that occurred preceding the collision indicated an unusual or dangerous situation to the Borgestad until the Managua came out of the fog and crossed her bow. Our conclusion is that the Borgestad was not at fault.

[9, 10] The general rule is to allow interest from the date of the collision. The Manitoba, 122 U. S. 97, 7 S. Ct. 1158, 30 L. Ed. 1095; Galveston Towing Co. v. Cuban S. S. Co., 195 F. 711, 115 C. C. A. 438; The El Monte, 252 F. 59, 164 C. C. A. 171. Nothing in this case appears to justify an exception to the general rule, and the decree would fall short of indemnifying the owner of the Borgestad for the loss it sustained, if interest is not allowed on the amount of such loss from the time it was actually sustained. However, interest will be calculated from February 9, 1921, a short time after the collision, because, in the stip-

ulation as to the amount of damages sustained by the Borgestad, that date was fixed by the parties as the time from which the Borgestad would claim interest.

The decree is modified by allowing interest on the amount awarded from February 9, 1921, at the rate of 5 per centum per annum, the legal rate in Louisiana, and, as so modified, is affirmed.

Modified and affirmed.