## THE EGLANTINE.

## CLYDE–MALLORY LINES v. THE EGLANTINE.

### No. 289.

District Court, E. D. Louisiana, New Orleans Division.

April 25, 1941.

Burlingham, Veeder, Clark & Hupper, of New York City, and Denegre, Leovy & Chaffe, of New Orleans, La., Proctors for libellant.

L. V. Cooley, Jr., Asst. U. S. Atty., of Slidell, La., for claimant United States.

BORAH, District Judge.

This is a suit by Clyde-Mallory Lines, owner of the steamship Brazos, against the steamship Eglantine, in rem, on a cause of action arising out of the collision which occurred between said vessels off the entrance to Galveston harbor on December 21, 1932. The material facts are these findings of fact:

The libellant, a Maine corporation, is and at all times herein mentioned has been the owner of the Brazos. At the time of the collision the Eglantine was owned by the United States of America and was being operated as a merchant vessel of the United States.

Subsequent to the collision but prior to the filing of this libel, the Eglantine was sold by the United States and at the time of the beginning of this suit was owned by Lykes Brothers-Ripley Steamship Company, Inc., a Louisiana corporation.

On December 23, 1932, Clyde-Mallory Lines filed in the United States District Court for the Southern District of New York its petition for limitation of liability in respect to the damages growing out of the aforesaid collision, and the United States appeared in said proceeding as owner of the Eglantine and filed its claim and its answer to the petition.

In due course the limitation proceedings came on for trial and the District Court, in determining the question of liability, held that the Eglantine and the Brazos were mutually at fault for the collision. An interlocutory decree was thereafter duly entered; whereupon the United States appealed. On February 21, 1938, the decree of the District Court was affirmed. 2 Cir., 95 F.2d 995. However, the final decree was not entered in the District Court until August 5, 1940, and as will appear from a stipulation of the parties attached to the final decree on mandate, it was then agreed that the damages sustained by Clyde-Mallory Lines amounted to the sum of $34,280.-93, and that the damages sustained by the United States amounted to the sum of $26,-621.70, both sums being exclusive of interest.

The present libel is the first pleading of any kind filed by Clyde-Mallory Lines, or on behalf of the Brazos, seeking to recover affirmatively from the Eglantine or the United States the damages sustained by Clyde-Mallory Lines or the Brazos by reason of the aforesaid collision. Upon the filing of this libel on June 10, 1937, process in rem was issued against the Eglantine and she was seized and taken into custody by the United States Marshal of this district. Thereupon, and pursuant to the provisions of Section 4 of the Suits in Admiralty Act, 46 U.S.C.A. § 744, the United States intervened, alleging among other things that it was a party at interest in the action; that the action was a claim against the United States of America; and that the United States desired the release of the Eglantine and assumed the liability for the satisfaction of any decree which might be obtained in said cause. Whereupon the Eglantine was released from seizure without the furnishing of bond.

Thereafter the United States filed its exception to the libel on the sole ground that "the libel, on its face, indicates that it was not filed in compliance with the provisions of Section 5 of the Suits in Admiralty Act (March 9, 1920, c. 95, Sec. 5, 41 Stat. 526; 46 U.S.Code, Section 745, as amended [46 U.S.C.A. § 745])." The exception came on for hearing and was overruled on the authority of The Bascobal, 295 F. 299, a decision from this the Fifth Circuit, and The Caddo, D.C., 285 F. 643. The Bascobal decision is squarely in point. The exception filed herein raised precisely the same contention and point as was urged in the Bascobal case and the Court there expressly determined that a suit such as the present one is not barred by the limitations prescribed by Section 5 of the Suits in Admiralty Act. It seems plain that the present suit is not one authorized by the Suits in Admiralty Act. It is not a suit against the United States; it is a suit in rem against a vessel privately owned. The United States has voluntarily intervened. Under these circumstances the limitations of Section 5 of the Suits in Admiralty Act limiting the time within which suits against the United States may be brought are not applicable to the instant suit, and the authorities, supra, so hold.

This suit is now before the Court on final hearing and by agreement has been submitted for final decision and decree solely upon the pleadings and a stipulation of facts. The written stipulation on file recites that the agreement is without prejudice to the exception to the libel filed by the United States and without prejudice to the exceptions and the motion to strike filed by the Clyde-Mallory Lines in connection with the answer of the United States. The last mentioned exceptions and motion to strike have never been submitted to or heard by the Court and they are being submitted at this time for such action as the Court may find necessary or proper. Under the circumstances, and for convenience of discussion, the questions thus presented will be referred to the merits.

660

## Discussion.

There is no issue here as to the right of recovery of the respective vessel owners or as to the amount of damages suffered by each as a result of the collision as these questions were settled in the New York litigation. Under the admiralty practice libellant could not set up against the United States in the limitation proceedings an affirmative claim for its collision damages, even though it had to defend in such proceedings the claim of the United States for its collision damages. Consequently, the Court in its final decree could only dismiss the claim of the United States on the ground that it could not recover any damages in the limitation proceedings because its damages were less than the amount of damages suffered by libellant. And it is because the Court could not in the limitation proceedings award libellant affirmative recovery of one-half of the difference between its damages and those of the United States that libellant is here seeking in this suit to recover such one-half of the difference, or $3,829.61 and interest.

There are but three questions that arise for decision: (1) The question of prescription or limitation which has already been decided against claimant and which requires no further consideration; (2) The question of laches pleaded by the claimant in its answer; and (3) The fixing of the interest to be awarded.

The plea of laches is predicated on the fact that this libel was filed on June 10, 1937, approximately four and one-half years after the date of the collision. The present suit was filed while the limitation proceedings were still in litigation and before a final decision was rendered on the question of liability, and before the United States District Court, acting under mandate of said decree of the United States Circuit Court of Appeals, finally determined the amount of damages suffered by the respective parties as a result of the collision. There is no merit in the plea. Claimant has had its day in Court both on the merits and in seeking to recover on its claim for damages, and it is now inequitably attempting to bar libellant's attempt to recover its damages to which the courts have found in effect that libellant is entitled. It is too plain

for argument that libellant has not been guilty of laches in seeking a determination of liability for the collision in suit.

In the stipulation of damages annexed to the final decree in the New York proceedings it was agreed,

"It is further stipulated and agreed that the computation of interest on the above items of the damages shall await the disposition of the United States District Court for the Eastern District of Louisiana in a suit brought therein by the petitioner herein in which the claimant herein has appeared as claimant of the steamship Eglantine, arising out of the same transaction."

While the amount of damages to be recovered by libellant in this suit is necessarily fixed by the New York decree and the stipulation of record at one-half the difference between the libellant's damages of $34,280.93 and the claimant's damages of $26,621.70, or $3,829.61 (one-half of $7,659.23), it is agreed that the amount of interest at the rate of four per centum per annum shall run as ordered by this Court.

The general rule is to allow interest from the date of the collision. Managua Nav. Co. et al. v. Aktieselskabet Borgestad, 5 Cir., 7 F.2d 990. I find nothing in this case to justify an exception to the general rule.

## Conclusions of Law.

The fact that the Eglantine was owned and operated by the United States when the cause of action alleged in the libel arose, did not prevent the accrual of that cause of action nor exempt the vessel from libel and seizure after it passed into private ownership and operation.

The fact that the Eglantine was subject to arrest and seizure when this suit was brought by the filing of the libel herein in rem, keeps this suit from being one authorized by the Suits in Admiralty Act, and from being one within the influence of Section 5, and it follows that the limitations in Section 5 are not applicable.

The plea of laches is without merit.

Libellant should have judgment herein against the United States of America for $3,829.61, together with interest at the rate of 4 per centum from December 21, 1932, and costs.

Let a decree be entered accordingly.