**EAGLE OIL & SHIPPING CO., Limited, v. THE JIM BROWN et al.**

United States District Court
S. D. Texas, Houston Division.
March 7, 1952.

Royston & Rayzor (Robert Eikel), of Houston, Tex., for libellant.

Fulbright, Crooker, Freeman & Bates (Carl G. Stearns), of Houston, Tex., for respondents.

**KENNERLY, Chief Judge.**

On February 16, 1947, a collision occurred in American waters, i. e., in the Port Arthur, Texas, Ship Canal, between the S. S. San Wilfrido, owned by Libellant, and the Barge R.T.C.94 while in the tow of the Tug Jim Brown, owned by the River Terminals Corporation, Respondent. The S. S. San Wilfrido was damaged, and Libellant brought this suit against Respondents to recover such damages. Heeding the Biblical command[1] to "agree with thine adversary quickly," the parties agreed, and Interlocutory Decree was entered that Libellant should recover from Respondents 72½ per centum of the damages sustained by Libellant, such damages to be ascertained by a sole Arbitrator in England to be chosen by the Solicitors of the parties.[2]

---

1. Matthew, Chapter 5, Verse 25.

2. The pertinent parts of such Interlocutory Decree are as follows:

"The above entitled cause having come on for hearing upon the date herein noted below, and the parties having appeared by and through their proctors of record and the Court being informed that the parties hereto have agreed upon a settlement hereof by the terms of which the Libellant Eagle Oil & Shipping Company Limited should recover of and from the Respondents the Tug 'Jim Brown' and River Terminals Corporation seventy-two and one-half (72½) per centum of the damages sustained by Libellant as a consequence of the collision made the basis of the suit hereof, these damages to be ascertained by reference to a sole Arbitrator in England to be chosen by the Solicitors of the respective parties hereto, and it being further agreed that the costs of such Arbitration including the fee of the Arbitrator should be borne equally by the parties hereto, and that the parties own costs in connection with the Arbitration of damages should be borne by the party incurring same, including Solicitors' fees, and it being further agreed that Libellant should recover interest from January 1, 1950, upon the percentum of damages so found by the English Arbitrator, and recover its costs in this Court, and it appearing to the Court that the stipulated settlement so agreed upon should be approved and adopted as the judgment of this Court.

"Now, on motion of the proctors for the parties hereto, it is

"Ordered, that the settlement agreed upon is approved and that Libellant Eagle Oil & Shipping Company Limited, as owner of the ss 'Sam Wilfrido', recover of and from the Tug 'Jim Brown' and her claimant and stipulators, and the Respondents, River Terminals Corporation, seventy-two and one-half (72½) per centum of the damages found to have been sustained by Libellant as a consequence of the collision here made the subject of suit, such damages to be found by a sole English Arbitrator chosen by the respective Solicitors for the parties hereto, the per centum of the damages so found to draw interest from January 1, 1950, and the costs of the Arbitration to be borne equally by Libellant and the Respondents, and each of the parties to bear its own costs and Solicitors' fees incurred in connection with such Arbitration, and Libellant to recover its costs of court herein, and it is further

"Ordered that a final decree be presented for entry herein with all convenient speed upon conclusion of the said Arbitration."

The Arbitrator in England was selected, and has, after full hearing, made his Award and filed his Report.[3] It will be observed, however, that the award is not in money of the United States, but in English money. And the parties are in agreement that Judgment enforcing the award must be entered and the award must be paid not in English pounds, shillings and pence, but in United States dollars, halves, quarters, dimes, nickels, and coppers. In other words, it must be determined how much in money of the United States Libellant is to receive for its damages and how much Respondents are to pay. At this point, such

Biblical command seems to have spent its force, and each of the parties has delivered the other "to the Judge."

Libellant says that on February 16, 1947, the date of the collision and the damage to it, the English pound was valued at $4.0275, and that the award in United States money on that basis amounts to and Libellant should be paid $43,551.50. Respondents answer that on September 18, 1949, the English pound was "devalued" and became, has been since, and still is valued at only $2.80. That, therefore, Libellant should not be paid $43,551.50, but only $31,053.51.[4] The difference is $12,497.99.

3. The pertinent parts of his Report are as follows:

"Whereas by a Memorandum of Agreement made on the 12th day of April 1951 between Holman Fenwick & Willan of 1, Lloyd's Avenue, Fenchurch Street in the City of London Solicitors for and on behalf of Eagle Oil and Shipping Company Limited the owners of the s. s. 'San Wilfrido' (hereinafter called 'the Claimants' and/or 'Libellant') of the one part and Thomas Cooper & Company of 27, Leadenhall Street in the City of London Solicitors for and on behalf of the Owners of the Tug 'Jim Brown' and River Terminals Corporation (hereinafter called 'the Respondents') of the other part reciting that on the 16th day of February 1947, the Respondents Barge 'R.T.C.92' in tow of the Tug 'Jim Brown' was in collision with and caused damage to the 'Claimants' vessel s. s. 'San Wilfrido' at Port Arthur, Texas, and whereas in proceedings pending in the United States District Court for the Southern District of Texas, Houston Division, the Claimants and Respondents had agreed to terms of settlement on the question of liability by entry of an Interlocutory Decree set out as follows:

\*    \*    \*    \*    \*

"And whereas the parties to the said Memorandum of Agreement agreed that George Henry Main Thompson the Registrar of the Admiralty Division of the High Court of Justice in England should act as sole Arbitrator (hereinafter called 'the Arbitrator') and that the Arbitrator should make a Final Award stating the amount at which he assesses the Claimants' damages arising from the aforementioned collision and that the Claimants should recover from the Respondents seventy-two and one-half (72½) per centum of such damages, NOW, I, the said Arbitrator, having taken upon my-

self the burthen of this Arbitration in accordance with the terms of the said Memorandum of Agreement and having duly weighed and considered the evidence both oral and documentary and the documents laid before me and also the arguments of the parties by their respective Counsel who attended before me Do Hereby Make This My Final Award and I Award And Adjudge that the damages sustained by the Claimants herein amount to £14,915. 4. 2d. (Fourteen Thousand Nine-Hundred and Fifteen Pounds Four Shillings and Twopence) And I Award And Direct that the Respondents do pay to the Claimants the sum of £10,813. 10. 7d. (Ten Thousand Eight-Hundred and Thirteen Pounds Ten Shillings and Sevenpence) such sum being seventy-two and one-half (72½) per centum of £14,-915. 4. 2d. with interest thereon from the 1st day of January 1950 And I Further Award And Direct that each party to the said Memorandum of Agreement do bear and pay their own costs of this Arbitration and a moiety of the costs of this my Final Award which amounts to £84. 0. 0d. (Eighty Four Pounds)."

4. Respondents, according to their brief, arrive at this amount in this way:

"Respondent concedes that since items 1 and 2 were paid in American dollars, they should be allowed at the rate of exchange in effect at the time of payment, that is, $4.0275 per English pound. These items, as allowed by the Arbitrator, totaled $3594.95. 72½% of $3594.95 equals $2606.35. The remaining items, Nos. 3–16, inclusive, allowed by the Arbitrator totaled £14,013.7.3. 72½% of £14,013.7.3 equals £10,159.13.10. Converting £10,159.13.10 at $2.80 per English pound results in $28,447.16. Adding $2606.35 (items 1 and 2) to $28,447.-16 gives the total of $31,053.51, which is the amount respondent contends that this

Respondents say that while Libellant's contention may be, generally speaking, the correct rule under some of the cases cited by Libellant,[5] it is not "a hard and fast rule." They say that there are exceptions to the rule, and that this is an exception.

■ 1:—The Agreed Interlocutory Decree provides that Libellant shall recover from Respondents "seventy-two and one-half (72½) per centum of the damages found to have been sustained by Libellant as a consequence of the collision here made the subject of suit." Clearly it is meant damages sustained as of date of the collision, February 16, 1947. Likewise, the Report of the Arbitrator means I think that he ascertained what damages Libellant sustained as of the date of the collision.

In other words, the effect of the Agreed Interlocutory Decree is that Libellant sustained certain damages on February 16, 1947, which Respondents became liable to pay to Libellant on that date, and the Arbitrator was directed to ascertain the amount of such damages as of that date, which it appears he has done. Since he finds the amount of damages in English money, I think it must be assumed that he meant the English pound of the value it was on that date.

Respondents attach to their brief a copy of Libellant's claim as it was presented to the Arbitrator. After conceding that the damages reflected by Items 1 and 2 of the claim should be paid to Libellant in money of the United States, because these items "were paid for by the Libellant in American dollars," Respondents say:

"It will be readily seen therefrom that only items 1 and 2 were paid for by the libelant in American dollars. These items totaled $3719.95, but the Arbitrator disallowed the survey fee of

$125.00, making the total allowance of provable damages by the Arbitrator in connection with these two items $3594.95. All the rest of the items making up the claim are figured in and claim presented in English pounds. Since the libelant has paid out only English pounds and incurred expense only in English pounds, except for items 1 and 2, it would be fully compensated and suffer no loss if it should be paid in English pounds, that is, English pounds at the exchange rate on June 28, 1950, the date of the interlocutory decree, which is the current exchange rate. To permit it to recover upon the exchange rate of $4.0275 per English pound would result in it receiving some £4,464. ($12,497.99) more than it paid out or incurred. To that extent the libelant would receive a 'windfall' and be 'unjustly enriched'."

■ But the copy of Libellant's claim, attached to Respondents' brief, also shows that such items (other than Items 1 and 2), if so paid out or incurred by Libellant in English pounds, were substantially all paid out and incurred in February, March, and April, 1947, at which time the English pound was of the value of $4.0275. It would cause a loss to Libellant to pay these items with an English pound of the value of $4.0275, and be reimbursed with a "devaluated" English pound of the value of only $2.80. For instance, Item 4 of such claim shows an expenditure by Libellant on February 16 to 19, 1947, of 1343 pounds, which at the then rate of exchange of $4.0275 was an expenditure of $5,408.93. Respondents say that Libellant should now only receive 1343 pounds at the present rate of exchange of $2.80, amounting to only $3,760.40. Libellant is entitled to

Court should allow the libelant to recover in the final decree, together with interest on that amount from January 1, 1950."

5. Libellant cites the following cases: Galveston Towing Co. v. Cuban S.S. Co., 5 Cir., 1912, 195 F. 711. Guinness v. Miller, D.C.S.D.N.Y.1923, 291 F. 769. Managua Navigation Co. v. Aktieselskabet Borgestad, 5 Cir., 1925, 7 F.2d 990, 1925 A.M.C. 1479. Miller v. Humphrey, 9 Cir., 1925, 7 F.2d 330. Shaw, Savill, Albion & Co., Ltd. v. The Fredericksburg, 2 Cir., 1951, 189 F.2d 952, 1951 A.M.C. 1273. The Celia v. The Volturno, 1921 A.C. 544, reported in 20 A.L.R. 884. The El Monte, 5 Cir., 1918, 252 F. 59. The Verdi, D.C.S.D.N.Y.1920, 268 F. 908. Wichita Mill & Elevator Company v. Naamlooze, etc., Industrie, 5 Cir., 1925, 3 F.2d 931.

be made whole and such a payment with a "devaluated" pound would not make it whole.

Under the facts and the weight of the authorities, I think Libellant's contention must prevail, and that Judgment should enter in its favor for $43,551.50, with interest from January 1, 1950, with costs.

