**TODD SHIPYARDS CORPORATION,
Plaintiff,**

v.

**TURBINE SERVICE, INC., Gonzales Manufacturing and Industrial Machine Works, Inc., and a Certain Turbine Rotor, Casing, Blades, Rings, Housing, and All Assorted Parts Thereto, all of which being from the SS Katrin, Defendants.**

Civ. A. Nos. 75–1825, 75–2719.

United States District Court,
E.D. Louisiana.

Sept. 22, 1983.

Donald F. Mooney, New York City, J. Francois Allain, New Orleans, La., for Auto Transp., S.A.

James B. Kemp, Jr., New Orleans, La., Richard A. Hagen, New York City, for Todd Shipyards Corp.

Michael G. Crow, New Orleans, La., for Turbine Service, Inc.

Fred E. Salley, New Orleans, La., for Travelers Ins. Co.

Ralph E. Smith, Allen F. Campbell, New Orleans, La., for Gonzales Mfg. and Indus. Machine Works, Inc.

John I. Hulse, IV, New Orleans, La., for Sentry Ins. Co.

William R. Pitts, Breard Snellings, New Orleans, La., for Siemens A.G., Siemens Capital and Siemens Corp.

## OPINION ON REMAND

CASSIBRY, District Judge:

■ The holding of this court was affirmed in part, modified in part, reversed in part, and remanded for further proceedings not inconsistent with the opinion in *Todd Shipyards Corporation v. Turbine Service, Inc.*, 674 F.2d 401 (5th Cir.1982). This court is instructed to resolve, upon remand, the following issues:

(1) the effect of the holding by the Court of Appeals that the red-letter clause in the Todd Shipyards Corporation ("Todd") contract limited Todd's liability for negligence or breach of contract to $300,000;

(2) the effect of the reduction of loss of use damage by the Court of Appeals to the amount of $498,000;

(3) the amount of pre-judgment interest that this court must award;

(4) the amount the damage awards against Travelers Insurance Company ("Travelers") and Sentry Insurance Company ("Sentry") must be reduced due to the holding by the Court of Appeals that Travelers and Sentry are not liable for any costs incurred in repairing and replacing the work product of their insureds, including the cost of inspecting, crating, shipping, and reinstalling the LP turbine, 674 F.2d at 423; and

(5) the final determination of damages with respect to all parties considering all of the above adjustments to the original opinion and award.[1]

Items 1, 2, and 5 concern adjustments and recalculations to be made in the damage awards in accordance with the opinion of the Court of Appeals, but require no new findings of fact or conclusions of law. The results of the recalculations are set forth in the Allocation of Damage Awards table which appears at the conclusion of this opinion.

## PRE–JUDGMENT INTEREST

### A. *The Rate of Interest*

■ In calculating the awards of pre-judgment interest, I have employed the current state statutory rates, as set forth in Article 2924 of the Louisiana Civil Code:

The rate of judicial interest resulting from a lawsuit pending or filed during the indicated periods shall be as follows. Prior to September 12, 1980, the rate shall be seven percent per annum. On or after September 12, 1980, until September 11, 1981, the rate shall be ten percent per annum. On or after September 11, 1981, the rate shall be twelve percent per annum.

---

**1.** Auto Transportation, S.A. ("Auto") has contended that the award of attorneys' fees must be adjusted in its favor. Defendants appealed this court's award of attorneys' fees to Auto. The Court of Appeals affirmed this court's award. 674 F.2d at 415. The Court found that Auto was entitled to recover costs and attorneys' fees.

674 F.2d at 412. "We affirm the courts' [sic] judgment awarding attorneys' fees to Owners." 674 F.2d at 424. Auto, however, did not appeal nor did the Court order any adjustment of the fee award. Auto has no basis to assert that the award of attorneys' fees and costs should be reconsidered or recalculated.

Though perhaps not pellucidly clear, the statute does not apparently intend that the date on which a suit is filed should freeze the rate of interest, or else the "pending" language would be surplusage. *Todd* has been pending during each of the three periods carved out by the legislature, and I find the most reasonable construction and application of Article 2924 to be the following: the rate of interest shall be seven percent from the date the loss was sustained through September 11, 1980, ten percent from September 12, 1980 through September 10, 1981, and twelve percent from September 11, 1981.

Auto has urged the court to use the prime rate, as evinced by certain commonly accepted interest rate schedules, as the appropriate touchstone in its calculations. The problem with Auto's position is quite simple: it has introduced no proof that it borrowed any money and incurred these higher costs. *See Signal Oil & Gas Co. v. Barge W–701*, 654 F.2d 1164, 1177 (5th Cir.1981). In the absence of such proof, I am unpersuaded that nothing short of the prime rate will grant Auto (and other parties) "full and fair" compensation and have determined that Article 2924, which clearly fixes rates of legal interest, should prevail.

B. *The Date From Which Pre-Judgment Interest Should Run*

■ The Court of Appeals stated that the award of pre-judgment interest is the rule rather than the exception. This Court was directed to calculate and award pre-judgment interest. 674 F.2d at 416. The award of pre-judgment interest is calculated from the date the loss was sustained. *Sabine Towing and Transportation Company, Inc., v. Zapata Ugland Drilling, Inc.*, 553 F.2d 489, 490 (5th Cir.1977); *Managua Navigation Co. v. Aktieselskabet Borgestad*, 7 F.2d 990, 993 (5th Cir.1925).

■ The Court of Appeals upheld this court's finding regarding the total amount of time it would have taken to conduct repairs on the LP turbine to return the turbine to the condition it should have been in on May 25, 1975. The Court of Appeals, however, also found that the vessel was operational only 77.2% of the time, resulting in a loss of use time of 166 days, at the rate of $3,000 per day. 674 F.2d at 414.

Auto, therefore, is to be awarded loss-of-use damages for 77.2% of the 215 days after May 25, 1975. Of course, it is not possible to determine the precise dates upon which the ship in question would have been operable. In the judgment of the court, calculation of pre-judgment interest from a date mid-way through the 215-day period represents a fair compromise. September 10, 1975 is 108 days after May 25, 1975. Thus, pre-judgment interest shall begin to run on September 10, 1975 for the entire amount of loss of use damages of $498,000. The total in this category is $124,184.00 up to November 14, 1978.

Payment of the Siemens bill for the cost of replacement blades and repair expenses occurred on three different dates. Total recovery for that category of damages was set at $221,393.76. Pre-judgment interest is awarded for one-third of that amount ($73,797.92) from September 9, 1975; for another third from September 22, 1975; and for the last third from November 14, 1975. Thus, total pre-judgment interest in this category amounts to $53,872 up to November 14, 1978.

Pre-judgment interest for the agents' accounts from Hansen & Tidemann, detailed at 467 F.Supp. 1257 at 1310, runs from the following dates on the following amounts:

| Date | Amount |
| --- | --- |
| August 13, 1975 | $ 7,277.28 |
| September 22, 1975 | 9,270.51 |
| November 18, 1975 | 2,232.44 |
| April 26, 1976 | 102,142.88 |

The total in this category is $24,657 up to November 14, 1978.

Expenses for the expert surveyor Higgins amounted to $11,292.07. Higgins billed Auto for work on the vessel between June 1975 and February 1976. Pre-judgment interest on that amount begins to run on June 21, 1976. The total in this category is $2,066 up to November 14, 1978.

Interest on the master's account awards is calculated on the following amounts from the following dates:

| Date | Amount |
|------|--------|
| June 5, 1975 | $18,500.00 |
| July 9, 1975 | 5,000.00 |
| October 10, 1975 | 5,000.00 |
| February 4, 1976 | 10,500.00 |
| February 26, 1976 | 37,526.72 |

The total in this category is $17,698 up to November 14, 1978.

Interest on the repatriation and recrewing expenses runs as follows:

| Date | Amount |
|------|--------|
| August 7, 1975 | $ 8,403.66 |
| August 13, 1975 | 1,977.33 |
| February 26, 1976 | 12,014.03 |

The total in this category is $5,186 up to November 14, 1978.

Pre-judgment interest on the award for Bunkers and Lube Oil of $43,977.61 begins to run on February 26, 1976. Interest on the bond premium of $938.00 is awarded from November 14, 1978. The total is $9,214 up to November 14, 1978.

■ Of course, Todd deserves to be paid pre-judgment interest from the date the contract should have been completed upon the amount it would have been paid by Auto on the contract. I have calculated that interest from May 24, 1975, the date of the ill-fated river trial, and the total is $48,206 up to November 14, 1978. Likewise, Todd owes Turbine Service pre-judgment interest on the amount Todd owes for the work contracted to Turbine Service and I have calculated that sum from the same date forward.

■ All such sums have been calculated up to the date of the original judgment, November 14, 1978. However, pre-judgment interest should run to the date of the judgment upon remand. *Ashland Oil Co. v. Phillips Petroleum Co.*, 607 F.2d 335, 336 (10th Cir.1979), *cert. denied,* 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1980); *Hysell v. Iowa Public Serv. Co.*, 559 F.2d 468, 476 (8th Cir.1977); *Riha v. Interna-*

*tional Tel. & Tel. Corp.*, 533 F.2d 1053, 1054–55 (8th Cir.1976).

Using the interest rates discussed above for the appropriate periods, the total pre-judgment interest due Auto up to November 14, 1978 is $236,877, minus $48,206 interest due on Auto's obligation to Todd, for a total of $188,671. Added to this is $137,715 interest to September 11, 1980; $120,268 to September 11, 1981; $337,873 to September 1, 1983; and $528 per day for each day after September 1, 1983 until entry of judgment.

### DETERMINATION OF LIABILITY OF TRAVELERS AND SENTRY

The Court of Appeals concluded that Travelers and Sentry were liable for those damages attributable to the "down time" of the ship such as damages for loss of use of the vessel, general expenses from the master's accounts, and pilotage, wharfage, tug, repatriation and recrewing expenses. In addition, the Court found that the "injury to work" exclusion in the comprehensive general liability insurance policies of Travelers and Sentry[2] excluded the cost of repairing or replacing the work product of the insureds. The Court also found that the exclusion does not exclude damages to property other than the insureds' work product. Because the Court found that this court did not exclude the coverage for all costs incurred in repairing and replacing the insured's work product, the Court remanded the case for redetermination of the exact amount of Travelers' and Sentry's liability.

Travelers and Sentry contend that the Court of Appeals directed this court to exclude *all* costs of inspecting, crating, shipping and reinstalling the LP turbine. Although I am forced to agree that the Court's statement on page 423 is ambiguous, I disagree with the insurers' contention. The statement appears at the end of three full pages of discussion in the opinion providing guidance on how to determine what precisely the insured's work product is and whether the exclusion excludes cov-

---

**2.** Travelers' exclusion (m) and Sentry's exclusion (*o*).

erage for damage to the insured's entire work product or merely to the defective components of that work product. It clearly was not necessary for the Court of Appeals to elucidate the subtleties inherent in the two determinations described above if the remand were a direction to exclude the *entire cost* of inspecting, crating, shipping and reinstalling the LP turbine. The Court's analysis has significance only if the remand is taken to mean that this court must segregate costs and dissect invoices in order to exclude only those costs of inspecting, crating, shipping and reinstalling the LP turbine that were attributable to the faulty workmanship of the insureds. This view is bolstered by the statement by the Court of Appeals, 674 F.2d at 423, that:

> "[O]n the other hand, *some of the 'out-of-pocket' expenses* awarded to the KATRIN's Owners are clearly part of the costs of repairing the faulty workmanship of Turbine Service and Gonzales, and consequently are excluded from coverage by exclusion (*o* )." 674 F.2d at 423 (emphasis added).

Travelers and Sentry have submitted long lists of expenses that they contend should be excluded from coverage as costs of inspection, crating, shipping or reinstallation. The contentions are, in the main, ill-founded.

The remand by the Court of Appeals has required this court to make a detailed review of the individual items of damage in order to determine whether any given item is excludable on the whole, not excludable, or excludable in part. The latter category of damages includes a large number of invoices where it is simply impossible to say that the expense was made entirely to repair faulty workmanship (thus making the expense excludable) or was suffered in part to repair faulty workmanship and in part to repair damages to property other than the insured's work product. There is even an argument to be made that all of the expenses of inspecting, crating, shipping and reinstalling the LP turbine would have been incurred in the same amounts even if no damage had been done to the insured's work product. For example, the cost of shipping the LP turbine to Germany for repair and rebuilding would have been the same whether or not any damages had occurred that required repair or replacement of the insured's work product. Consequently, under that theory, none of the costs of shipping to Germany should be excluded.

■ All of these considerations lead to the conclusion that only a percentage of the costs of inspecting, crating, shipping and reinstalling the LP turbine may be excluded. The next question is how to determine that percentage.

I have already determined that the policies excluded the $51,323.00 cost of replacing blades in rows 11–14 and 63 other blades in miscellaneous rows of the turbine. Total cost of repairing the LP turbine was found to be $221,393.76. Thus, the excludable costs of repair and replacement comprised 23% of the total repair costs. Therefore, I have reviewed each invoice to the extent possible given the state of the record and, whenever a cost of inspection, crating, shipping or reinstalling the LP turbine appears to be included in an item of damage, I have excluded 23%. No item appears to be excludable as a whole.

Each and every item of expense has been reviewed according to the principles and discussion set forth above. The following items are excluded from coverage:

| Category | Amount Excluded | Invoiced Items Reviewed |
|---|---|---|
| Repair and replacement of blades | $51,323.00 [3] | Not applicable |
| Account Dated August 13, 1975 | 110.00 | 16 |
| Account Dated September 22, 1975 | 1,890.90 | 9 |
| Account Dated November 18, 1975 | 283.00 | 2 |
| Account Dated April 26, 1976 | 14,495.00 | 84 |
| Higgins Expenditures | 2,597.00 | |
| TOTAL: | $70,698.00 | |

3. Per original opinion, 467 F.Supp. at 1312.

As the Court of Appeals directed, Travelers and Sentry continue to be liable for damages for loss of use of the vessel, general expenses from the master's account and pilotage, wharfage, tug repatriation and recrewing expenses.

**Allocation of Damage Awards**
(As of September 1, 1983)

| Party(ies) liable * | Judgment | In favor of |
|---|---|---|
| Auto Transport | $ 4,110.00 | Todd |
| Todd | 300,000.00 [a] | Auto Transport |
| Travelers and Sentry | 449,934.29 [b] | " " |
| Turbine Service and Gonzales | 70,698.00 [c] | " " |
| Travelers and Sentry | 399,647.00 [d] | Todd |
| Todd | 255,275.75 [e] + $84.00/day until entry of judgment | Turbine Service |
| Turbine Service | 255,275.75 + $84.00/day until entry of judgment | Travelers |
| Travelers and Sentry | 784,527.00 + $528.00/day until entry of judgment | Auto Transport |
| Turbine Service and Gonzales | 25,983.00 + $9.00/day until entry of judgment | Auto Transport |
| Travelers and Sentry | Attorney's Fees & Costs | " " |

\* In case of multiple parties, liability is joint and several.

---

[a] Total Damages to Auto Transport

| | |
|---|---|
| Repair of LP turbine | $ 221,393.76 |
| Loss of Use | + 498,000.00 |
| Expenses | + 276,052.53 |
| | $ 995,446.29 |
| Amount Owed by Auto on Contract | − 174,813.00 |
| | $ 820,632.29 |
| Todd Liability Limit due to red-letter clause | − 300,000.00 |
| | $ 520,632.29 |

[b] Damages Not Paid by Todd

| | |
|---|---|
| | $ 520,632.29 |
| Exclusions | − 70,698.00 |
| | $ 449,934.29 |

[c] Amount Excluded under Insurance Policies     $ 70,698.00

[d] Todd Liability to Auto     $ 300,000.00
Todd Expenses for Vessel Maintenance     + 99,647.00
(See 467 F.Supp. at 1312)

     $ 399,647.00

[e] Amount Owed by Todd on Contract     $ 125,818.75
Pre-Judgment Interest from May 24, 1975     + 129,457.00

     $ 255,275.75

Counsel for Auto will prepare a judgment consistent with this opinion forthwith.